GABRIEL MOORE'S ADM'R v. MARY MINERVA AND HER CHILDREN.

The case of Womack v. Womack, *supra*, cited in answer to the first point in this case.

Suit by a negro woman and her three children, by their next friend, for their freedom, and for the value of the services of the mother ; Held, that there was no misjoinder of parties.

It is common in Chancery, where several claim under the same title, (to sustain a suit in the name of all as plaintiffs, and) to decree to each one his particular interest ; and our proceeding, by petition, is analagous to a proceeding in Chancery.

The objection that the petition does not aver what were the laws of Ohio, where the deed of manumission was executed, is not well taken. If, by the laws of Ohio, such manumission was forbidden, the fact should be shown by those impeaching it ; because a restriction on the right of the owner of property to dispose of the same at his pleasure, must be affirmatively shown, before his right to do so can be restrained. (The master had taken his slave to Ohio and manumitted her.)

There is nothing in our laws which would cause a slave emancipated by deed to revert to the condition of slavery, by coming into this State with her former owner.

The laws which forbid the immigration of free negroes into this State, and provide for their removal, do not incapacitate such free negroes from suing for their freedom, before it has been forfeited by proceedings under those laws.

In a successful suit for freedom, if the defendant took possession in good faith, damages (in the nature of hire) would be allowed from the time of a demand made for freedom ; and, in the absence of proof of demand, from the commencement of suit.

If slaves are taken by their owner, from Alabama to Ohio and manumitted there, and are then brought into this State, in a suit for their freedom our Courts will not investigate the question whether or not such manumission violated the laws of Alabama.

A deed of manumission cannot be impeached by the administrator of the grantor, on the ground that it was made to defraud creditors ; the creditors alone can impeach it on such ground.

It seems that an administrator, with the will annexed, is chargeable with notice of the contents of the will, although it be in a particular as to which the will has no direct legal effect.

Appeal from Harrison. Tried before the Hon. W. W. Morris.

Suit by the appellees, by their next friend, against Obadiah Hendrick, administrator, with the will annexed, of Gabriel Moore, and William A Hill, to establish their freedom ; an amendment of the petition claimed pay for the services of said Mary Minerva. The suit was commenced Nov. 24th, 1852, and the ages of the children were then seven years, four years, and six months ; a fourth child, born during the pendency of the suit, was made a party by amendment.

Gabriel Moore, being at the time a resident of Alabama, in 1841 or 1842 took Mary Minerva, then between twelve and fourteen years of age, to Cincinnati, Ohio, and left her there at school, declaring at the time, in Cincinnati, his intention to educate and emancipate her. In Sept., 1842, he returned to Cincinnati and executed there a deed of manumission to said Mary Minerva, and had it put upon record. Again, in 1843, he returned to Cincinnati and took Mary Minerva away with him, telling witness that he was going to Mississippi and that his address was Panola Town, Panola county, Mississippi. In the Spring of 1843 or 1844, Moore immigrated to Texas, bringing said Mary Minerva with him. In 1844 he died, leaving a last will and testament in which he mentioned the deed of manumission ; stating that it was on record in Cincinnati ; and stated his desire that said Mary Minerva should be free ; and

in case of opposition thereto, from any quarter, bequeathed her to his brother, with the request that he would emancipate her. Mary Minerva had been hired out ever since, and at the date of the suit, was hired to the said William A. Hill.

*C. M. Adams*, for appellants.

*Marshall & Wigfall*, for appellees.

LIPSCOMB, J. This suit was brought by Mary Minerva to recover the freedom of herself and her children, and to recover damages against the administrator of Moore;—verdict and judgment in her favor; motion for a new trial overruled; and the administrator appealed to this Court. The errors assigned are,

First. The said cause was tried in December, 1855, at a time when the District Court had no power to hear and determine causes—at a time when no District Court could be holden.

Second. The Court erred in overruling the demurrer.

Third. The Court erred in striking out the special answers of the defendant.

Fourth. The Court erred in not charging the law of the case.

Fifth. The Court erred in the charge to the Jury.

Sixth. The Court erred in overruling the motion for a new trial.

These assignments are very general; we propose, however, to take up such of them as may be regarded as presenting anything material to be discussed and decided, as presenting the grounds intended by appellant's counsel, and presented in his brief. The first ground, the authority to hold the District Court at the time it was holden, has been decided and overruled, in the case of Womack v. Womack, decided a few days ago.

We propose to take up the exceptions to the petition, pre-

sented by the demurrer, the overruling of which is the appellant's. Second error assigned : That there is a misjoinder of petitioners, four persons sueing together for freedom, and for damages for the deprivation thereof. This ground is not well taken, and could not be sustained under the most stringent rule of pleading. The suit is by the mother, for her own freedom and the freedom of her minor children, whatever may be the style of the parties ; and if there were damages to be assessed for the services of the children, it would inure to her benefit, and might well be consolidated in one judgment, as accruing for the services of herself and children.

But, if the children had not been minors, it is not believed that the objection would be sustained. The parties all claiming their freedom under the same title, might well unite in the action ; and so far as the damages for the deprivation of their liberty is involved, though the damage would be separate and to each individual according to the proof of the value of their services, there can be a separate judgment. The judgment and decree would be in favor of each for his freedom, and the damages assessed to each. It is common in chancery, when several claim under the same title, to decree to each one his own particular interest ; and our proceeding, by petition, is analagous to a proceeding in Chancery. There is no inconvenience in such rule ; it dispenses with a multiplicity of suits, which is a favored object, always to be encouraged by our jurisprudence, and is not more difficult in practice than assessing the different value of a slave and his services, in a case brought to recover a number of slaves ; which has to be done in such cases, and is of frequent occurrence.

The objection that the petition does not aver what were the laws of Ohio, where the deed of manumission was executed, is not well taken. If, by the laws of Ohio, such manumission was forbidden, the fact should be shown by those impeaching it ; because a restriction on the right of the owner of property to dispose of the same at his pleasure, must be affirmatively shown,

ʰbefore his right to do so can be restrained. The Supreme Court of the United States said, "that as a general proposition, it would seem a little extraordinary to contend that the owner of property is not at liberty to renounce his right to it, either absolutely or in any modified manner he may think proper. "As between the owner and his slave, it would require the most "explicit prohibition by law, to restrain this right." (8 Peters, 220.) And in Jones v. Laney and her children, (2 Tex. R. 346,) this Court said, "We believe that the right of property "connects with it the right of relinquishing that property. If "the right of property was in James Gunn, the former owner "of the appellee Laney, the presumption is there was also a "right to dissolve the relation of master and slave. This pre-"sumption could only be rebutted by proof of some municipal "regulation in restraint of such right."

There is nothing in our law, by which she could forfeit her liberty, by coming into Texas with her former owner. It would not forfeit her liberty, nor restore the right of ownership to the former owner, who had emancipated her by deed valid at the time and place it was executed. By the first Section of the Act of Congress of the Republic of the 5 March, 1840, (Art. 2546, Hart. Dig.) it is enacted that from and after the passage of this Act, "it shall not be lawful for any free person of color to emigrate to this Republic." The second Section, (Art. 2547, Hart. Dig.) directs how the prohibition in the preceding Section shall be enforced. It provides "That if any free per-"son of color shall emigrate to this Republic, it shall be the "duty of the Sheriff or any of the Constables of the county to "which such imigration shall be made, to arrest such free per-"son of color, after giving him ten days notice, and bring him "before the Chief Justice of the county or Judge of the District; "and it shall be the duty of said Chief Justice or Judge of the "District, before whom such free person of color may be brought, "to receive the bond of such free person of color in the sum "of one thousand dollars, with security of a citizen to be ap⁻

" proved by him, conditioned for the removal of such free per-
" son of color out of the limits of the Republic."

And the third Section directs that in case the free person of
color shall not be able to give the bond and security required by
the preceding Section, when brought before the Chief Justice
or Judge of the District, as in the preceding Section required,
he shall be committed to jail, and directs how the Sheriff shall
sell such person into slavery.

These enactments do not affect the state of freedom, but only
provide a mode by which it may be forfeited, and neither the
former owner nor his legal representatives can claim such for-
feiture ; and there is nothing in their enactment to prohibit
such free person of color from suing for his freedom, until after
it has been forfeited precisely in the manner prescribed by law.

The next exception under the demurrer was designed to
question the right of the plaintiffs to recover damages for their
services during the time they were restrained and deprived of
their liberty by the defendant.   The appellant has shown that
by the settled rule of decision in Kentucky, a free person of
color cannot recover damages for the time he was held in
slavery, from the person so holding him in slavery.   We do
not feel ourselves bound to submit to the authority, on that
subject, of the Kentucky rule ; and notwithstanding the great
respect to which the decisions of that Court are justly entitled,
we are constrained to withhold our concurrence on this ques-
tion, and we cannot express our reasons for so doing in stronger
language, nor on sounder reasons, than we find contained in a
portion of the opinion of one of her own Judges, cited by the ap-
·pellant in his brief in this case.   In the case of Alee v. Trevis,
(4 Dana, 248,) the portion of the opinion to which we have re-
ferred reads thus : " One  question only remains ; and that is,
" whether the plaintiff is entitled to damages for detention.
" Upon principle or analogy, or even policy, it would be difficult
" to deny that the plaintiff may have a lawful right to indemnity,
" for an unauthorised deprivation of his liberty, and an unli-

" censed appropriation of his constrained services. There are, " however, some judicial declarations tending to an opposite con- " clusion. But we do not consider the question as concluded " by authority." It is believed, however, that in Kentucky, damages are refused, and likewise in the Courts of Virginia. We cannot regard it as settled on principle. The ground of good faith in which the defendant held the possession cannot be sustained as a legal reason why damages should not be al- lowed in this case. Whether the damage should be limited, where the possession was in good faith, to the time from which a demand was made, does not come up under the demurrer, as, under the petition, the demurrer does not go beyond the question whether damages can be allowed or not. In this case, however, the damage has not·been asked nor given for the time before the commencement of the suit. If damages had been asked for the whole time that the plaintiff had been held in servitude by the defendant, it would then have become a question, whether the defendant held them in servitude all of that time, or what part thereof, in good faith. If the defendant had taken possession in good faith, damages would be allowed from the time of a demand made, and in the absence of proof of demand, from the commencement of the suit, which would have been regarded as a judicial demand.

We have gone through all the grounds presented by the appellant in his brief, in support of his demurrer.

The appellant insists that the Court erred in overruling his pleas which set up special matter in defence. The matters of defence set up by these pleas, were, that the deed of manumission was not in good faith ; that it was not made in conformity with the laws of Alabama ; that there are large debts unpaid against Moore, the former owner. Whether the deed of manumission, made in Ohio, was made in conformity with the laws of Alabama, or would have been valid there, are questions for the tribunals of that State, but cannot be decided in ours. If slaves are taken by their owner from Alabama to Ohio and

manumitted there, and then carried back to Alabama, the Courts of Alabama would determine whether such manumission was valid under her own laws.

The rights of creditors cannot be interposed by the administrator of the former owner to impeach the deed of manumission made by himself. If the deed was made to defeat former creditors, it can be impeached by such creditors, and not by himself whilst living, nor by his representatives after his death.

The last ground presented by the appellant's brief, on which a reversal of the judgment is claimed, is the overruling the motion for a new trial ; and it is applied by the appellant, to the damages allowed. He contends that in order to sustain the verdict for damages, the plaintiffs ought to have shown by proof, that the defendant held them in servitude in bad faith, knowing them to be free. This question has been discussed and decided by us already, under the demurrer ; that such proof was not necessary, and could not have authorised a different verdict. In addition to what was then said by us, it abundantly appears that the defendant did know, or cannot deny the knowledge, that this intestate did not claim the plaintiffs as slaves. The will of the former owner had been probated in Harrison County, and had never been set aside. The defendants are his administrators, *de bonis non*, with the will annexed ; and in that will the testator recognizes the deed of manumission made by him in the State of Ohio, and they cannot be permitted to deny knowledge of the provisions of the will, so probated and never set aside. The will was not a valid will to emancipate the plaintiff, because not made in conformity with the laws of Texas, in which the testator resided. But it was legal and competent evidence to prove the execution of his deed of manumission, made in Ohio. A will may be invalid as a will, and yet be proper evidence for something else. (See Shepherd v. White, 11 Tex. R. 352.) But, as we have before said, whether the defendants acted in good or bad faith, in holding the plaintiffs in servitude, the plaintiffs were entitled

to damages after the commencement of the suit. We believe the Court below did not err in overruling the motion for a new trial ; and the judgment is affirmed.

Judgment affirmed.