CHIBE JUSTICE DUVALL
delivered the opinion or the court:
This is an appeal from a judgment of conviction rendered by the Mercer circuit court, at its April term, 1863, against Edward 1). Scott, who was indicted for the murder of his stepson, James Tilford.
The defense.set up on behalf of the prisoner was that he was insane at the time of the commission of the homicide.
*228 The grounds mainly relied on for reversal are, first, that the court erred in instructing the jury; and, secondly, in admitting important evidence.
1. The evidence relating to the question of insanity, as set out in the bill of exceptions, is quite voluminous, and need not be stated or referred to here, further than to say that it conduced to sustain the ground of defense relied on, sufficiently so, at least, to authorize the court to instruct the jury with regard to it.
At the close of the evidence, the court, having instructed the jury in substance that, although they might believe that the accused was unsound in mind, yet such unsoundness did not justify an acquittal on the ground of insanity, unless they believed that the accused, at the time of the commission of the act, did not know right from wrong in reference to the killing of the deceased, or if he did not know that such killing was wrong, that his mind was so disordered that he had not the mental power to control his actions, — gave the following instruction, marked No. 4:
“The court further instructs the jury, that, although they believe that the accused was laboring under what is termed moral insanity, yet moral insanity is no excuse in law for the commission of crime, unless the moral insanity overwhelmed and destroyed the faculties of the mind to such an extent as to render the accused incapable of governing his actions, at the time of the commission of the act; and the jury ought not to acquit upon such moral insanity, unless it had manifested itself in former acts of similar character, or like nature, of the. offense charged.” , .
To this instruction two objections are urged by counsel for the appellant, the first and most obvious of which is that it requires the jury to find, as an indispensable condition of acquittal on the ground of moral insanity,, that the insanity had manifested itself in former acts of homicide.
Such is undoubtedly the effect and meaning.of the instruction, according to the fair and natural construction of the language used. And it hardly needs an. argument to prove that in this respect, if in no other, the instruction was misleading *229 and erroneous, and prejudicial to the appellant. It is true that one witness, a physician, in a very brief statement of his professional opinion touching the characteristics of thiq disease, stated that “moral insanity never springs first fully developed, but is of gradual growth.” This view is sustained as well by adjudged cases of the highest authority, as by the most approved elementary writers on this subject. In a case decided by the supreme court of Pennsylvania, it was said by Chief Justice Gibson, that “the doctrine which acknowledges this mania is dangerous in its relations, and can be recognized only in the clearest cases. It ought to be shown to have, been habitual, or at least to have evinced itself in more than a single instance. * * If juries were to allow it, as a general motive, operating in cases of this character, its recognition would destroy social order as well as personal safety. To establish it as a justification in any particular case it is necessary either to show, by clear proof, its contemporaneous existence, evinced by present circumstances, or the existence of an har bitual tendency, developed in previous cases, becomingin itself a second nature.” (Wharton & Stille on Med. Jur., sec. 54.)
Although, therefore, this ground of defense is so peculiarly liable to abuse, to guard against which the utmost care and circumspection are required, on the part of the court, in presenting to the jury the legal principles relating to it, yet no authority has been found for the principle embodied in the instruction under consideration, which requires that moral insanity, before it can be made available as a legal excuse for crime, must have manifested itself “in former acts of similar character, or like nature, of the offense charged.” And, in our opinion, the instruction was to this extent erroneous.
The other objection to the instruction is that it requires the jury to believe, from the evi lence, that the moral insanity “overwhelmed and destroyed the faculties of the mind to such an extent as to render the accused incapable of governing his actions at the time.”
We are not prepared to say that this, if properly understood, was too strong a statement of the principle, or that it was practically injurious to the appellant. For, in another case *230 cited by Wharton & Stille, it is said by Judge Lewis, that “moral insanity arises from the exis'tence of some of the antural propensities in such violence that it is impossible not to yield to them. It bears a striking resemblance to vice, which is said to consist in an undue excitement of the passions and will, and in their irregular or crooked actions leading to crime. It is, therefore, to be received with the utmost scrutiny. It is not generally admitted in legal tribunals as a species of insanity which relieves from responsibility for crime, and it ought never to be admitted as a defense until it is shown that these propensities exist in such violence as to subjugate the intellect, control the will, and render it impossible for the party to do otherwise than yield. Where its existence is fully established this species of insanity, relieves from accountability to human laws. But this state of mind is not to be presumed ■without evidence, nor does it usually occur without some premonitory symptoms indicating its approach.” (Med. Jur. sec. 55.) And it is elsewhere laid down, in the same treatise, that “it is not to be supposed that a single impulse is diseased while all the other functions of the mind retain their healthy action. While the entire intellect enjoys sound health there is nothing in which a morbid desire of theft, murder, &c., could originate, and such a phenomenon is a psycological impossibility, and the assumption of such requires a psycological contradiction. A mania sine delirio, a mania without a morbid participation or disturbance of the perceptive faculties, is, therefore, out of the question, as a desire to injure or destroy is impossible without an act of the mind by which this purpose is entertained, and as reason and understanding are alike disordered, whether they insinuate a wrong motive for the morbidly conceived purpose of the act, or whether they entirely omit the suggestion of any reason whatever.” (Sec. 177.)
Without going further into the discussion of this abstruse and perplexing subject, it is apparent from what has been said that, before this species of insanity can be admitted to excuse the commission of crime, it must be shown to exist in such violence as to render it impossible for the party to do otherwise than yield to its promptings. This is the fundamental *231 fact to be established to the satisfaction of the jury. And whether this impossibility of resistance arises from a subjugation of the intellect by the morbid impulse or propensity, or from an overwhelming and destruction of the faculties of the mind to the extent of rendering the party incapable of governing his actions, is a point, it would seem, of not much practical importance. We think, however, that the form of expression used by Judge Lewis, in the passage before quoted) more aptly conveys the correct idea, and is, therefore, less calculated to confuse or mislead the jury than that adopted by the court below in the instruction we have been considering. Except in the particulars mentioned the court committed no error in giving or in refusing instructions.
2. Nor do we think the court erred in allowing a witness who had been introduced by the defendant, to be recalled and examined with the view of laying a foundation for contradicting her testimony in chief, by showing that she had made statements different therefrom. It is unnecessary to notice this point further, as no such question will probably arise upon a subsequent trial.
For the error mentioned the judgment is reversed, and the cause remanded for a new trial and further proceedings not inconsistent with this opinion.