[Opinion approved March 20, 1883.]

A. GOLDMAN, ADM'R OF T. C. BARDEN, DECEASED, v. L. & H. BLUM AND HEIDENHEIMER BROS.

(Case No. 1389.)

1. PROMISSORY NOTE WITH COLLATERAL STIPULATIONS, ETC.— Though at common law no suit could be maintained on a transfer to two persons of a part only of a note, with a reservation of the balance of the instrument to the original payee, yet in our courts, where the rules as to joinder of parties and causes of action are very liberal, and where there is no distinction observed in the assertion of rights between legal and equitable claims, and where the parties, as in this case, have a lien on a part of the note, and also seek in chancery the foreclosure of an express lien on certain real estate, by which the payment of the note is secured, it is held that the suit in its present form can be maintained under our former decisions.

2. NOTICE.— Cases referred to in support of above: Stachely v. Pierce, 28 Tex., 328; Moore v. Minerva, 17 Tex., 20; Faulk v. Faulk, 23 Tex., 653; Lanes v. Squyres, 45 Tex., 383.

3. SAME.— The death of the maker dispenses with the necessity of giving the notice required by the deed of trust before a foreclosure could be had in cases like the present.

4. EFFECT OF INDORSEMENT.—The effect of the partial indorsement of the instrument in question, together with the other stipulations in the agreement on the back of the note, placed there at or before its execution, was to deprive the instrument of its negotiable character, notwithstanding the ordinary negotiable words appear on the face of it. In order to determine its character the whole instrument must be construed together, as well the words on the back as on the face of it. Authorities and cases on this point examined.

5. EVIDENCE.— All the written instruments executed at or about the same time that the note and deed of trust in question were made, together with the rough notes and memoranda made at the time when the matter was still pending, are compe-

tent evidence to go to the jury for the purpose of arriving at and understanding the true intent and purpose with which the note in question was executed. Such evidence cannot be used to vary or contradict or alter the note, but may be used to show the intent of the parties in executing it.

6. SAME — CASE APPROVED.— The rule of evidence in Wells v. Fairbanks, 5 Tex., 584, on this point, cited and approved.

7. RES GESTÆ.— What was said and done by the parties while the business was being arranged, and the transaction was then depending, is admissible as part of the res gestæ, and is calculated, in the absence of direct evidence, to shed light on the real character of the transaction.

### ON REHEARING.

8. CASES DISTINGUISHED.— The cases of Lindsay v. Price, 33 Tex., 282, and Frank v. Kaigler, 36 Tex., 305, not overruled, and the difference between them and the present case noted.

9. CASE DISCUSSED.— Case of Knight v. Holloman, 6 Tex., 162, considered in connection with the word "assign" as used in the second section of the act of 25th of January, 1840.

10. NEGOTIABLE NOTE.— Authorities cited to the effect that though an agreement may have the form of a promissory note, and have the conventional terms that ordinarily invest such instruments with the character of negotiability, yet if such negotiable words are limited or qualified by any contemporaneous stipulations in the body of the note or on its back, such conditions or limitations form a substantive part of the agreement, and may, and often will, as in this case, destroy its negotiability.

APPEAL from Victoria. Tried below before the Hon. H. Clay Pleasants.

This suit was jointly brought by Leon & H. Blum and Heidenheimer Bros. against A. Goldman, administrator of the estate of T. C. Barden, deceased, and Eva L. Barden, his widow, and John Owens, to recover against said estate, in favor of Leon & H. Blum, the sum of $4,000, with interest thereon from the 12th day of March, 1877, and to recover in favor of Heidenheimer Bros. the sum of $5,267.92, with interest thereon from the date aforesaid, and to foreclose a deed of trust executed by Barden and wife.

The basis of the suit was a promissory note for $15,000, executed by Barden to Owen, of date February 28, 1877, secured by a deed of trust on lands and on property, executed on the date aforesaid.

Four thousand dollars of said note was assigned by Owens to Leon & H. Blum, and $5,267.92 thereof to Heidenheimer Bros., on the 20th day of March, 1877.

The defendants, A. Goldman, administrator, and Eva L. Barden, demurred to plaintiffs' petition, and as a special ground of demurrer alleged that the suit could not be maintained by the plaintiffs upon the partial assignments made to each of the plaintiff firms of the specified portions of the note sued on.

The demurrer further set up the misjoinder of parties plaintiff.

The demurrers were overruled and the cause was tried by a jury, and a judgment rendered in favor of the firms plaintiff for the sum by them severally claimed.

The note was as follows:

"$15,000.            VICTORIA, TEXAS, February 28, A. D. 1877.

"Two years after date I promise to pay to John Owens, or order, the sum of fifteen thousand dollars, with interest thereon at the rate of eight per cent. per annum from maturity until paid, value received.

"This note is due and payable in the city of Galveston, state of Texas, and is secured by deed of trust on lands and premises in Wharton county, state of Texas.

(Signed)                             "T. C. BARDEN."

On the back of the note was written as follows:

"For value received, I hereby transfer to Leon & H. Blum the amount of four thousand dollars of the within note and the security therefor; and for value received, I hereby transfer to Heidenheimer Bros. the amount of fifty-two hundred and sixty-seven dollars and ninety-two cents of the within note and the security therefor, with interest on each amount from March 12, 1879; and for value received, I hereby guaranty and insure the prompt payment of the within note at its maturity, and waive suit, protest and notice on each of the respective amounts referred to above.

"GALVESTON, TEXAS, March 12, 1877.         JOHN OWENS."

There was proof that, about the date of this note, Barden, Owens and one Shelton entered into articles of partnership.

The above note was dated February 28, 1877. The transfer on the back is of date 12th March, 1877. The articles of partnership between Owens, Barden and Shelton, above alluded to, were dated 12th March, 1877. The deed of trust was acknowledged in Victoria by Barden and wife on the 8th of March, 1877, and was recorded in Wharton county, 17th of March, 1877. S. Blum, of the firm of Leon & H. Blum, was the trustee named in the deed, and had been agreed upon as trustee before the note or deed of trust was signed. At the same time, 12th March, 1877, Owens executed his notes to L. & H. Blum and Heidenheimer Bros. for the debts he previously owed them.

There was also offered in evidence letters and memoranda, made about the date of the transactions, by the parties to them. These bore the date of about the 14th of February, 1877. T. C. Barden died before the maturity of the note.

There was evidence introduced to show that notwithstanding the apparent difference in dates, that the note, the deed of trust to secure the note, the articles of partnership between Owens, Barden and Shelton, the memorandum and correspondence and Owens' notes to appellees, were all parts of one transaction, the action in reference to which extended from about the 12th of February, 1877, or a little before that date, down to the 12th and possibly the 17th of March, 1877, and that in fact up to the 12th of March, 1877, that Barden's note remained under the control and in the possession of either of Barden himself, or of his agent Owens, as also were up to that date Owens' own notes to the appellees.

In the articles of partnership it was especially agreed that Barden's note and deed of trust above set forth were not to be used by Owens except as collateral security for the payment of such advances as might be made in the future by Galveston merchants to the firm of Owens, Barden & Shelton, and any other disposition of it was expressly forbidden.

The evidence of Shelton was to the effect that though Owens was then in fact insolvent, that both he (Shelton) and Owens concealed his financial condition from Barden and did not inform him of the existence of the debts, for the securing of which, Owens, in fact, assigned the note in question, contrary to his written agreement with Barden.

The evidence does not show that either L. & H. Blüm or Heidenheimer Bros. knew that Barden had forbid Owens to transfer the note except for future advances.

It appears, however, that they knew that Owens, Barden and Shelton had formed a partnership. The court excluded the articles of partnership so far as they related to L. & H. Blum and Heidenheimer Bros., but admitted them so far as Owens was concerned.

The court excluded the letters, memoranda, calculations, etc., marked exhibits " A," " B " and " C," that were offered in evidence as part of the *res gestœ*.

The notice required by the terms of the deed of trust, before a sale could be had, is referred to in the opinion. Verdict and judgment for L. & H. Blum and Heidenheimer Bros. Owens made no defense.

*Lackey & Kleberg* and *A. B Peticolas*, for appellant.

*Glass & Callender* and *Scott & Levi*, for appellees.

I. Under our system of blended law and equity jurisdiction, two parties can maintain a suit upon a promissory note of which a part

has been assigned to each; if together, the two assignments transfer all that is due on the note. All the parties to the note sued on in this case being before the court, so that the equities among them all could be adjusted, the general and technical rule of law, that a partial indorsement will not support an action, did not apply. Liddell *v.* Crane, 53 Tex., 550; Guest *v.* Rhine, 16 Tex., 549; Smith *v.* Klopton, 4 Tex., 114; Flint *v.* Flint, 6 Allen, 34; Groves *v.* Ruby, 24 Ind., 418; 2 Story's Eq. Jur., 1039, 1040, 1044.

II. The six months' notice required by the provision of the deed quoted in said second proposition related to a foreclosure in the summary method allowed by the deed of trust itself, and not to a suit against the administrator of Barden and his widow, after said administrator rejected plaintiffs' claims. The deed of trust provided for foreclosure by sale of the property conveyed, being an ordinary deed of trust. The petition alleges Barden's death before the maturity of the note, and that plaintiffs' claims were rejected by the administrator.

III. That the court having admitted the articles of copartnership to the jury, the exclusion of them in his charge from the consideration of the jury as evidence to prove notice of their contents on the part of plaintiffs, is appellants' ground of complaint, if any they have, and not the fact that at a particular period in the progress of the case he excluded the articles. The articles are incompetent to prove notice to plaintiffs, but competent to prove Owens' liability to Goldman, and the court properly instructed the jury as to the competency of the articles for different purposes.

IV. The propositions of A. B. Peticolas, Esq., under the second assignment of errors, and the proposition of Lackey & Kleberg, under the fifth assignment of errors, are designed to show error of the court in excluding evidence of the equities between Barden and Owens, because the note sued on was not a negotiable instrument, for that:

1. The deed of trust executed at the same time as the note to secure it, and which was transferred with the several parts of the note sued on, contains a provision that the trust created in said deed should not be foreclosed without six months' notice to Barden of the *cestui que trust's* intention to foreclose.

2. The note was transferred by assignment and not indorsement.

3. The assignments were as collateral security for a prior debt of payee, who guarantied the payment of the note.

4. The note was assigned in part to two persons by the payee.

5. The proof showed that the words of the assignment from

Owens to plaintiffs were on the note before Barden signed the note, and that said assignment was not signed by Owens until Barden executed the note.

To the said propositions we offer the following counter propositions:

*First.* The provision of the deed of trust referred to relates entirely and exclusively to the mode of foreclosing the lien created by said deed, and in no wise affected Barden's personal liability on the note as a negotiable instrument, or changed the character of the note itself. The action is in the nature of *debitatus assumpsit;* the note is the evidence of the debt and the deed of trust merely an incident. Cannon *v.* McDaniel, 46 Tex., 305; Helmer *v.* Crolick, 36 Mich., 371; Kelley *v.* Whitney, 45 Wis., 110.

*Second.* In Texas the distinction which obtains in the law merchant between assignment and indorsement does not obtain, but, on the contrary, all assignments of negotiable instruments are treated as indorsements, and an assignment passes the legal title. R. S., title XII, arts. 262–265 and 270; Davis *v.* Wilson, 31 Tex., 136; Knight *v.* Holloman, 6 Tex., 153; Guest *v.* Rhine, 16 Tex., 549; Liddell *v.* Crane, 53 Tex., 550.

*Third.* The assignment of a promissory note in payment of, or as collateral to secure a prior debt, is a transfer in the ordinary course of trade. Blum *v.* Loggins, 53 Tex., 121; Liddell *v.* Crane, 53 Tex., 550.

*Fourth.* Assuming that an assignment of a negotiable instrument in Texas operates as an indorsement by the law merchant, the fact that the assignment was of portions only, did not strip the note of its negotiable character. The fact that the note was assigned in parts could only become important in Texas if separate suits were brought on the various assignments. Tappen *v.* Eley, 15 Wend., 362; Leland *v.* Parrot, 35 Iowa, 454; 1 Daniel on Neg. Inst., secs. 698, 699.

*Fifth.* The fact that the transfer was written on the note at the time that Barden signed it did not affect the negotiability of the note as a commercial instrument so far as Barden was concerned, for he was in law bound only by the language of the note itself, and that made it negotiable. If the existence of the transfer on the back of the note at the time Barden signed it possesses any significance whatever, it would seem to indicate that not only did Barden by signing the note give it (as in law he did) the quality of general negotiability, but that he consented, in case of assignment as indicated on the back of the note, to its being split into several

parts, and that the owner of each should have the right to sue. Rohdle *v.* La Fayette Lodge, 15 Tex., 446; Pownal *v.* Ferrand, 6 Bos. & C., 439; La Fayette S. Bank *v.* St. Louis S. Co., 4 Mo. App., 276; Chapman *v.* Rose, 56 N. Y., 137.

V. The exhibits A, B and C, referred to in said propositions, were irrelevant to prove notice to plaintiffs, or either of them, of the terms of partnership between Owens and Barden. 1st. Because they were never executed. 2d. Because they were written before February 14, 1877, and the partnership did not go into effect and the note was not executed until long thereafter.

VI. There was no evidence before the jury requiring the court to more fully define notice, and the court gave no charge that misled them, nor omitted any that was proper or requisite to a correct finding by the jury. The record supports the judgment. Luke *v.* Reed, 29 Iowa, 258; Phelan *v.* Moss, 77 Pa. St., 59.

WEST, ASSOCIATE JUSTICE.— The court ruled correctly in holding that, under the averments in the pleadings, the appellees could jointly sue for the recovery of the amount due to them, and for the foreclosure of the lien on the real estate described in the petition.

At common law such a transfer of a part only of the note to two distinct persons, and a reservation of the balance of the instrument to the original payee, could not be recognized, and no action at law could be maintained on such a title by any of the parties to it. Hawkins *v.* Cardy, 1 Ld. Raym., 360; Heilbut *v.* Nevil, 4 L. R., C. P., 358; Conover *v.* Earl, 26 Iowa, 169; Groves *v.* Ruby, 24 Ind., 418; Chalmers' Dig. of the Law of Bills, Notes and Checks, art. 115, and cases there cited; Field *v.* The Mayor of N. Y., 2 Seld., 179; Hughes *v.* Keddell, 2 Bay, 324; Miller *v.* Bledsoe, 1 Scam., 530; Wait's Actions and Defenses, vol. 1, 574.

With us there is, however, no distinction between legal and equitable rights as to the manner of their assertion, and under the operation of the very liberal rules as to the joinder of parties plaintiffs and of causes of action heretofore laid down by the court, the ruling of the district court on this point can be sustained, as justified by the previous practice of the court. Stachely *v.* Pierce, 28 Tex., 328; Moore *v.* Minerva, 17 Tex., 20; Faulk *v.* Faulk, 23 Tex., 653; Lane *v.* Squyres, 45 Tex., 383.

The action of the court, under all the facts of the case, in holding that on account of the death of the maker, and for other reasons, the plaintiffs were not required to give the six months' notice

as to foreclosure required by the deed of trust before bringing suit, was correct.

Let us now consider the nature and character of this partial transfer by Owens to the appellees of the note in question. What effect did it have upon the character of the instrument? Did it take away its negotiable qualities? The record discloses the fact that though the note and the deed of trust to secure it have a different date from that of the partial transfer from Owens to appellee, yet as a matter of fact they are of the same date, or at least constitute one transaction.

The record shows that the execution of the note, the agreement on the back of it, the deed of trust, and the articles of partnership between Barden, Owens and Shelton, and the execution of his notes by Owens to appellees, were all in fact contemporaneous. They are in law but one transaction, and all relate in part to the same matter, and must be considered as executed practically at the same time.

The partial transfer by Owens on the back of the note had the effect of making it (or a part of it) collateral security for his own notes of that date, which notes were given for an antecedent indebtedness of his to the appellees.

He at the same time became a guarantor for the prompt payment of the entire amount of the note, and also in the same instrument waived protest and notice.

The instrument on its face gave notice that it was secured by a deed of trust on land, in which deed it was provided that the land should not be sold even after the maturity of the note without six months' notice of the intention to foreclose being given to the maker. The character of notice was also carefully provided for.

This partial transfer was prepared and written on the back of the note by the appellees either before or at the time of its execution. The evidence leads to the conclusion that it was, under their direction, written on the note before the signature of the maker, and it may have been, and likely was, signed by Owens before Barden himself signed the instrument. Be that as it may, before its final delivery it was all arranged and understood between Barden, Owens and the appellees what the body of the instrument should contain, and what should be written on the reverse side of it over the signature of Owens; and one of the appellees was in advance agreed upon as trustee, before the note and deed of trust were signed.

There was an averment in the pleadings of appellees that Owens owned no part of the instrument after his partial transfer of it to the appellees. But the evidence failed to sustain the allegation.

The correspondence between appellees, Owens and Barden shows the fact that Owens still owned it, or held at least the legal title to it.

The effect of this partial transfer was to split the title of the note into three separate and unequal parts. Two parts of it belonged separately to the appellees, the unpaid balance belonged to Owens. All this plainly appears from the contemporaneous stipulation of the parties on the face and the reverse of the note in question.

The title to the note was thus in the three, and Owens, according to the testimony of one at least of the appellees, and no doubt in accordance with the agreement and understanding of all of them, was to surrender the possession of the note and leave it in the hands of the appellees, they holding, in addition to their own interest, his interest also, as collateral security for the payment of his antecedent indebtedness to them, still unpaid and represented by his own promissory notes of equal date.

The result of this arrangement all agreed upon and understood by the parties, before the execution and delivery of the note, and evidenced by it, was, in our opinion, under the facts of the case as disclosed by the note and the collateral agreement of the parties on the back of the note, taken both together, to effectually strip the instrument of its negotiable characteristics. The relation, too, in which the parties then stood to each other, the unusual provision of the deed of trust, which was a part of the same transaction, and drawn under the direction of appellees, that no foreclosure should be had without six months' notice to the maker, given in a particular way, and necessary even after the maturity of the paper; the fact that the note was delivered by Owens, to be used and held as collateral security for his antecedent debts; the fact that the property in it was before its execution parceled out between Owens and the two firms, who were his creditors; that the remaining balance Owens was also to allow them to hold as additional collateral security for his debt due to them, and that he was to waive protest and notice and guaranty the entire note, would strongly indicate that it was not transferred in the due course of trade, and was in fact out of the usual and ordinary course of business of parties dealing with commercial paper, even if that fact did not appear, as it does, from the face and back of the instrument. The reason of this is well stated by Mr. Edwards in the third and last edition of his valuable work on Bills and Notes, vol. 1, section 396, marg. p. 279. After stating that the right of property in a note (e. g., Owens' right of property in the note of Barden) necessarily implies the right to sell

it, or make such other disposition of it as the owner and holder may see fit, he goes on in the same connection to observe: " But the payee or indorser of a note cannot assign or transfer a part of the sum due thereon, so as to enable his indorser to maintain an action on the note against the maker."

" The reason is," says Mr. Edwards, " that no one can recover on a note unless he shows a title to the instrument, and he cannot deduce his title through an indorsement which is not made in compliance with the established custom of merchants, and this custom of merchants does not allow the contract to be apportioned so as to subject the parties liable thereon to separate and distinct actions." ·" That custom directs that the indorsement should be made in writing on the note or bill appointing the contents to be paid to some third person, but does not recognize a partial indorsement. The language of the books is that an indorsement transfers the property of the note or bill to the indorsee. What does less than that is not strictly an indorsement, and hence, says Mr. Justice Bayley, an indorsement cannot be made for the transfer of less than the full sum that appears to be due upon the bill or note." Story on Prom. Notes, secs. 23, 24; Roberts v. Hall, 7 Conn., 212; Wait's Actions and Defenses, vol. 1, pp. 612, 613; also pp. 585, 586, 590, 591; Parsons on Notes and Bills, vol. 2, ch. 6, sec. 3, pp. 146–149.

In Douglas v. Wilkeson, 6 Wend., 640, Chief Justice Savage, Judge Marcy and others composing the court, a similar question was presented. In that case the note was for $2,500, and the holder (the payee) indorsed the same to the plaintiffs for $750, a part only of the contents of the note. The question was, whether that was a transfer in the due and ordinary course of business. After discussing the question fully and ably, the court, speaking with reference to the contract created by this character of partial indorsement, say: "When, therefore, the contract between the payee of a negotiable note and a third person is of such a character as to give the latter no rights, as against the maker, that contract is not an indorsement of the note *within the custom of merchants.*"

Chancellor Kent, 3 Com., p. 59, says: " The bill cannot be indorsed for a part only of its contents, unless the residue has been extinguished." In this case we have seen the appellees refused to credit the balance as paid. The law then applicable to non-negotiable instruments furnishes the rule for determining the respective rights of the parties in this transaction.

If the appellees knew, or by the use of ordinary diligence and inquiry of the proper sources from which it was reasonably certain or

probable that all necessary information could be obtained, they could have ascertained the facts as to the true relation in which Owens stood to the note, then they are charged with such knowledge. Bacon v. O'Connor, 25 Tex., 213; Wethered v. Boon, 17 Tex., 143.

This subject of notice was entirely a matter of fact to be ascertained from the evidence. The whole question on this subject was one for the jury to pass upon, after considering all the facts and circumstances surrounding the transaction.

The charge of the learned judge who tried the case was not entirely and in every respect satisfactory on this subject, and did not fully submit all these matters to the jury with a sufficient explanation of the law governing the case. It, however, in some respects, was not objectionable. Addison on Con., vol. 1, pp. 448–450. The articles of partnership between Owens, Barden and Shelton bearing the same date in fact as the other papers, should have been allowed to go to the jury, not only in relation to the appellants' claim against Owens, but also as throwing light on the issues raised by the pleadings between appellants and appellees.

It was calculated to show how, and under what conditions, and for what consideration, Barden had executed the instrument in question.

Taken in connection with the fact that the appellees knew that Barden was to be a partner of Owens in his mercantile relations, and if they had commercial dealings with him in the future, they would deal with him in all likelihood in that capacity, these articles might to some extent at least assist the jury in arriving at the real truth of the matter.

For the same reason we are of the opinion that the court erred in excluding from the consideration of the jury the papers mentioned in the appellants' bills of exception as exhibits " A," " B " and " C."

They were calculated, to some extent at least, to explain the circumstances surrounding all the parties when the note in question was made, and might be useful in enabling the jury to determine whether the appellees did not understand, or could not have learned, that the note in question was intended as a basis for future credit, and not to pay the old debts of Owens to appellees, long past due, and in which Barden had no interest, and in reference to which he was under no obligation, moral or legal, and of the existence of which, as may be inferred from Shelton's evidence, he was kept in ignorance.

In cases of this character, where the maker of the instrument is dead, and his widow and administrator are ignorant of the true history of the transaction, resort must be had to the best legal testimony that the nature of the case will admit of, in the absence of positive proof. If direct and positive evidence cannot be obtained, circumstantial evidence, if it exist and is lawful testimony, can be resorted to.

In Wells v. Fairbanks, 5 Tex., 584, Judge Wheeler observes: "Great latitude is justly allowed by the law to the reception of indirect and circumstantial evidence, the aid of which is constantly required to remedy the want of direct evidence. In the absence of direct evidence, that which conduces in any degree to establish a material fact alleged is in general admissible."

Any fact may be submitted to a jury, provided it can be established by competent means, which affords any fair presumption or inference as to the question in dispute. 1 Starkie Ev., 57, 58. See also Chandler v. Meckling, 22 Tex., 36; Cooper v. The State, 19 Tex., 457, 458.

What was said and done by the parties while the business was being arranged, and while the transaction was then depending *et dum fervet opus*, is admissible in evidence as part of the *res gestæ*, and is considered as well calculated, in the absence of direct evidence, to shed light on the real character of the transaction. 1 Greenl. Ev., 113; Ahern v. Goodspeed, 72 N. Y., 108.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 30, 1883.]

There was a motion for rehearing filed. In disposing of it the court delivered the following opinion:

### ON REHEARING.

WEST, ASSOCIATE JUSTICE.— There is only one ground taken in the motion for rehearing that will require any notice. To that attention will be very briefly called.

Before doing so, however, we will take advantage of this occasion to make an observation or two having no reference to the present motion, in addition to what has been said in the original opinion, in relation to some points that are there considered.

Lest it might be supposed that the cases of Lindsay v. Price, 33 Tex., 282, and Frank v. Kaigler, 36 Tex., 305, are overruled by

this case, it is proper to add something to what was before stated as to the right of appellees to bring this suit.

In the brief of appellants our attention was more than once called to these two cases, and it was urged that as the transfer of the instrument was in this case clearly partial, and out of the usual course of business, and contrary to mercantile usage, that the appellees failed to show such title as would be sufficient for them to maintain their action upon the instrument in question.

We arrived at the conclusion, however, that there was a marked difference between the case at bar and the two cases above referred to, and, without intending to overrule these cases, held that the appellees could, under the facts of this case, undoubtedly maintain this suit in the form and manner in which it was brought. In arriving at this result, though the subject was considered, we did not attach any great importance to the use of the word "assign" in the second section of the act of 25th January, 1840 (Hart. Dig., art. 2521), for the reason that in Knight v. Holloman, 6 Tex., 162, this court had decided, after full and able arguments, in a carefully prepared opinion delivered by Justice Wheeler, that this word, as there used, was simply employed to denote the transfer of negotiable paper. No further scope or significance was given to it.

As our courts, however, constantly exercise in the same cause both legal and equitable powers, we held that this suit could be maintained, inasmuch as it had been held by high authority that such a qualified and partial transfer as the one in question, even of paper clearly negotiable, was not absolutely void, but gave the transferee a claim upon the note in the nature of a lien. Byles on Bills, 6th ed., top page 233, marg. pages 171, 172. This, too, was really a suit to establish a rejected claim against the estate of a deceased person, and was also in effect a bill in equity for the foreclosure of a lien on real estate secured by a deed of trust, which deed, by reason of the death of the maker, and the refusal of the administrator to act, could only be enforced through the instrumentality of the district court; for all these reasons, as well as many others that could be given, we held that under the facts of this case the appellees had the right to maintain the suit. Smith v. Clopton, 4 Tex., 113; Ogden v. Slade, 1 Tex., 13; Spann v. Sterns, 18 Tex., 556; Payne v. Benham, 16 Tex., 314; Gibson v. Moore, 22 Tex., 611.

The authorities are full and satisfactory to the effect, that though the agreement or written instrument may have to some extent the form of a promissory note, and may use in its body the conventional

terms that ordinarily invest such instruments with the character of negotiability, yet if, by a stipulation in the body of the instrument, these elements which give it negotiability are limited and qualified, the negotiability of the instrument is destroyed. Woods v. North, 84 Pa. St., 407; S. C., 24 Am. Rep., 201; Farquer v. Fidelity Ins. Co., 18 Albany Law Journal, 330; 1 Parsons on Notes and Bills, 37, 38; 2 Parsons on Notes and Bills, 534 et seq.

It is also well settled that any memorandum or agreement of the parties, written across the face or on the back of the instrument contemporaneously with its execution, and intended and understood by them to constitute a part of the contract, is a substantive part of such note, and limits and qualifies it in the same manner as if inserted in the body of the instrument itself, and, with it, constitutes a single contract. 1 Daniel Neg. Inst., 59, 60, 79, 149; Carlin v. Knealey, 12 M. & W., 139; Warrington v. Early, 2 Ellis & Bl., 763; Hartley v. Wilkinson, 4 M. & S., 25; Benedict v. Cowden, 49 N. Y., 402; Leeds v. Lancashire, 2 Camp., 205; Springfield Bank v. Merrick, 14 Mass., 322; Barnard v. Cushing, 4 Met., 230; Shaw v. Meth. Epis. Society, 8 Met., 223; Fletcher v. Blodgett, 16 Vt., 26; Jones v. Fales, 4 Mass., 245; Johnson v. Heagan, 23 Me., 329; Briggs v. Lapham, 12 Met., 475; Smith v. Nightengale, 2 Stark., 375; Leading Cases on Bills and Notes (Redfield & Bigelow), pp. 8, 9, 194 et seq.; 2 Parsons on Notes and Bills, 539.

The effect of such a disposition of the contents of the note under consideration, as was provided for by the stipulations on its face and on its back, all made at the same time and constituting one transaction, was to rob it of the character of negotiability. Its contents were from the first apportioned and set apart by the maker and payee and transferees. It was divided into three distinct and unequal parts among three different owners. If this act did not destroy the commercial qualities of the instrument, might not the three owners of it again split it and parcel it out still further, and subdivide it into still smaller parts?

Such an instrument, to borrow the forcible language of Lord Denman, "carries its death-wound apparent on it." Goodman v. Harvey, 4 Adol. & Ellis, 870.

The only ground of the present motion to which it has been necessary to give attention, is that in which it is contended that the court was in error as to the facts contained in the transcript. The record has been again examined, and the opinion is found to state the facts in accordance with the record.

Beyond this matter of a supposed mistake, or a misapprehension

by the court of the facts, there is nothing in the motion that merits special attention.

No new authorities have been called to our notice, and we find nothing in it except the statement as to the supposed mistakes of the court as to the matters of fact that requires consideration.

The motion is refused.

MOTION REFUSED.

Judge STAYTON did not sit in this case.