## JONES et al. v. LYNCH.

### (Court of Civil Appeals of Texas. Dallas. April 29, 1911.)

**1. Bills and Notes (§ 242\*)—Indorsers—Rights.**

One not a mere indorser, but an original promisor who placed his name on the paper sued on before its delivery and to subserve purposes of his own, is not entitled to the strict rights of a mere indorser or surety.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 542, 547–551; Dec. Dig. § 242.\*]

**2. Mortgages (§ 209\*) — Deeds of Trust—Sale—Notice to Beneficiary — Duty of Trustee.**

It is the duty of a trustee under a deed of trust to inform a beneficiary of an intended sale, and a failure so to do, whether done advisedly or negligently, is a fraud on such beneficiary's rights.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 466–468; Dec. Dig. § 209.\*]

**3. Trusts (§ 95\*)—Constructive Trusts.**

Whenever the title to property has been acquired by fraud, concealment, or under other circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property in favor of the one equitably entitled thereto.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 145–147; Dec. Dig. § 95.\*]

**4. Trusts (§ 145\*)—Breach of Trust—Liability of Beneficiary.**

Where one of several beneficiaries takes part in a breach of trust whereby loss is occasioned, his interest in the trust property may be reached to make good the loss of the other beneficiaries.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 190; Dec. Dig. § 145.\*]

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Action by John Lynch against George Phillips Jones and others. Judgment for plaintiff, and defendants appeal. Affirmed.

On June 5, 1908, John Lynch brought suit in the district court of Ellis county, against George Phillips Jones, as principal, and C. H. Alexander, as surety, to recover judgment on five notes for $1,500 each, with interest and attorney's fees, and to foreclose a trust deed on two tracts of land, one in Van Zandt county and the other in Henderson county; this trust deed having been given to secure the notes sued upon and also to secure five other notes of the same amount given to T. M. Dees. It was alleged in the original petition that the Dees' notes had been paid. A judgment by default was rendered against defendants. This judgment was set aside on a showing that the Dees' notes had not in fact been paid and that they were owned by the Bond Guaranty Company, an insurance corporation, which was a necessary party to the suit. On March 14, 1910, plaintiff filed a third amended original petition against Jones and Alexander and also against the Bond Guaranty Company. This petition declared on the original cause of action against Jones and Alexander, and, after alleging that the Dees' notes had been transferred to the Bond Guaranty Company, further alleged as follows:

"At the institution of this suit plaintiff was advised, and so believed, that the notes of T. M. Dees, above mentioned, had been paid off and canceled, and hence no attempt was made to make the holder of said notes a party to this suit as first instituted, and * * * a judgment by default was rendered in this cause in favor of plaintiff against defendants George Phillips Jones and C. H. Alexander, and afterwards such default was set aside upon their motion and assertion that the defendant the Bond Guaranty Company was the holder and owner of said Dees notes, which they asserted had never in fact been paid off and discharged, wherefore they claimed that said Bond Guaranty Company, of which they were president and secretary, was a necessary party to this suit in order that the rights and equities of all parties in interest might be asserted and settled, to the end that the mortgaged land when sold should bring a fair and adequate price, and consequently upon the order of the court said Bond Guaranty Company was made a party hereto. The sheriff of Van Zandt county and his successors in office were named as trustees of the deed of trust above mentioned, and after the order of the court sustaining the motion of defendants Jones and Alexander for a new trial, and holding that the defendant the Bond Guaranty Company was a necessary party to this suit, said Jones and Alexander, acting for themselves and also as officers of the Bond Guaranty Company, the stock of which is all, or practically all, or largely, owned by them, and for the purpose of gaining for said Bond Guaranty Company and themselves, as practically the owners thereof, and main stockholders therein, an unconscientious and wrongful advantage, and for the purpose of depriving this plaintiff of the benefits of his security, procured the sheriff of Van Zandt county to advertise the property mentioned in the above-described deed of trust for sale under a power of sale contained in said instrument and to sell the same upon a date not definitely known to plaintiff, but believed to have been on the first Tuesday in January, 1909, without giving this plaintiff any notice of such proceeding, and at said sale said defendant Alexander or Jones, for and on behalf of said Bond Guaranty Company, bid in said Henderson county tract of land of 640 acres, in the name of said Bond Guaranty Company, and caused said officer and trustee to make a conveyance thereof to said Bond Guaranty Company, for a grossly inadequate price, to wit, for the nominal sum of $750, when said tract of land was then reasonably worth

---

\*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

$6,500. When the defendants Jones and Alexander procured said trustee to make sale of said land as aforesaid, they knew that this plaintiff had no knowledge or notice of their efforts in such regard, and, when said trustee made said sale, they knew that this plaintiff was still in ignorance of what they had done, and of what said trustee was doing in regard to said sale, and that said trustee had given this plaintiff no notice of his proceedings in that regard, all of which was also known to them when they took and accepted the conveyance from said trustee, and plaintiff further charges the truth to be that said Bond Guaranty Company did not in fact, at the time it received its deed from said trustee, pay to him any sum of money whatever, and that it has never paid to him any sum of money whatever, unless in the nature of compensation for his services as trustee. Plaintiff charges that it was the duty of the trustee to advise him (plaintiff) of his purpose to make sale of said property, and when said sale would be made, and while he believes that there was no actual intent on the part of said trustee to do any wrong, and that he, as trustee, did not believe it incumbent upon him to advise plaintiff of his act, still his failure to do so, under the circumstances, was a breach of duty on his part towards plaintiff, of which breach said Bond Guaranty Company had notice at the time of said sale, if in fact it did not through its officers actually procure or cause said trustee to fail to give this plaintiff information of what he was doing, and of said sale, and the result of the action of said trustee, and of the defendants herein, if permitted to stand, would be to unconscientiously deprive this plaintiff of valuable rights, and it would be unconscientiously inequitable for the defendant the Bond Guaranty Company to retain and enjoy the legal title thereto and beneficial interest in the land so conveyed to it as against this plaintiff. Plaintiff is advised that the other tract of land above mentioned was at said sale bid in by a third party, who, in so far as it is informed, had no notice of and did not procure the failure of said trustee to advise this plaintiff of his proceedings, and, if this should prove to be the fact, such purchaser and said other tract of land will no longer be proceeded against herein.

"Plaintiff charges, as advised, that the acts of the defendants herein in procuring sale of said 640 acres of Henderson county land and of purchase of same, as aforesaid, constituted a fraud upon the rights of this plaintiff and the jurisdiction of this court, and that to obtain complete justice between the parties hereto it is necessary for the defendant the Bond Guaranty Company to be held a trustee in said land to the extent of the rights of this plaintiff, and that the sale thereof should constitute no bar to the full assertion of plaintiff's rights under said deed of trust, and, all of the parties defend-

ant herein having heretofore answered, plaintiff prays for a judgment against defendant Jones as maker and against defendant Alexander as indorser, guarantor, or surety for the full amount due, principal, interest, and attorney's fees upon the notes by him herein sued on, with foreclosure of his deed of trust lien upon said 640 acres of land, and said other land, if entitled thereto, with such judgment in respect to said Dees notes as may be found just and equitable and for costs of suit and such other, further, or different relief as he may be entitled to according to the rules of law or equity."

On March 14, 1910, defendants Jones and Alexander filed their first amended original answer, consisting of a general demurrer and general denial and a special plea as follows:

"For further and special answer said defendants say that the alleged notes described in plaintiff's petition were executed by defendant Jones and indorsed by defendant Alexander in accordance with the terms of a certain contract or agreement between T. M. Dees and John Lynch on the first part and defendants Jones and Alexander on the other part, and that heretofore, to wit, on the 22d day of April, 1907, said parties undertook to reduce said agreement to writing, and as thus reduced to writing it was signed and executed by the parties in the following form, to wit: 'State of Texas, County of Dallas. This contract, made and entered into this 22d day of April, 1907, by and between T. M. Dees and John Lynch, of Midlothian, Ellis county, Texas, parties of the first part, and George Phillips Jones, of Dallas, Texas, acting by and through his agent and attorneys in fact, C. H. Alexander, party of the second part, witnesseth: (1) The parties of the first part agree and contract to deliver to the party of the second part, canceled and satisfied in full, twelve certain vendor's lien notes in the sum of $1,500 each, executed by R. C. Fisher and payable to T. M. Dees and John Lynch, parties of the first part, or to transfer said notes without recourse, as the parties of the second part may direct, said notes being for a part of the purchase price of what is known as the Three-Circle Ranch in Erath county, containing 7,200 acres of land, and said notes being also secured by a deed of trust upon said land. The parties of the first part further agreeing to release the vendors' and deed of trust liens held by them upon said land, or to transfer said liens, as the parties of the second part may direct. (2) In consideration of the above and foregoing the party of the second part agrees to execute his personal notes payable to the parties of the first part, at Dallas, Texas, in the sum of $18,000, to be indorsed by C. H. Alexander, due on or before, one, two, three, four and five years from the date of execution, bearing seven per cent. interest per annum, interest payable annually, and to secure said notes

by deed of trust creating a first lien on 640 acres of land out of John Hancock survey No. 6 in Henderson county, Texas, and in addition thereto to execute a deed of trust on 805 acres of land in Van Zandt county, Texas, four miles, north of Wills Point, known as the A. N. Alford Farm, said deed of trust to be a second lien on said land, there being at present a first lien on said land to secure the payment of $14,000. (3) In consideration of the above and foregoing it is agreed by and between the parties hereto that if the second party shall sell or trade the above-described lands upon which he is to execute deeds of trust as above set out, and acquire other lands by reason of such transaction, the parties of the first part will take the land so traded for at a price to be agreed upon between the parties, if such an agreement can be reached; or, in lieu thereof, if such an agreement cannot be reached, they agree to take a first lien upon said land to secure the aforesaid notes for $18,000, conditioned the land offered is of equal value of the lands to be released, and to release the liens upon the lands in Van Zandt and Henderson counties hereinbefore described, but not the personal indorsement of C. H. Alexander. (4) It is also understood and agreed by the parties hereto that the substance of the agreement and stipulation contained in the paragraph next preceding this paragraph, shall be embodied in the deed of trust to secure the notes for $18,000 to be executed by the party of the second part, as above set out. This contract is made and performable until May 15, 1907. Witness our hands in triplicate this 22d day of April, 1907. [Signed] T. M. Dees. John Lynch. C. H. Alexander, for George Phillips Jones. C. H. Alexander.'

"Defendants say that this contract was executed under the following circumstances: The notes made by R. C. Fisher and held by Dees and Lynch, and referred to in said contract, constitute a second lien on the Erath County Ranch, referred to in said contract, there being a prior lien on said land amounting to upwards of $37,000, and the security for the Fisher notes was precarious, and the equity in said ranch over and above the first lien was of very doubtful and uncertain value, and it was reasonably certain that said equity was not sufficient to secure the payment of said second lien notes if it should ever become necessary to force payment by foreclosure.

"Said Jones had negotiated to acquire certain properties in Cleburne, Tex., by trading the said Erath County Ranch, and in order to carry out this transaction it became necessary to have said second lien notes released. Dees and Lynch were very anxious to make any arrangements to better their condition. It was explained to them, and it was a fact, that Jones owned or controlled a very considerable amount of property in East Texas and other places; but, while this property was valuable, it was not of the character that could be readily sold for cash, and that Jones did not have, or expect to have, any considerable amount of money, but that he would be willing to turn in any property, at a reasonable value, in payment of said notes Dees and Lynch stated that they were willing to take property at a reasonable valuation in payment of said notes; but, in order to carry the transaction through without material delay, it was agreed that the selection of the property to be conveyed in consideration of said notes should be deferred to suit the mutual convenience of the parties; but it was understood and agreed that if said Jones and Alexander should offer reasonably good property at reasonable value, in payment or part payment of said notes, said property would be accepted, and it was never, in fact, contemplated that the notes should be paid in money, unless Jones and Alexander failed or refused to offer property at reasonable valuation in satisfaction of said notes. And while it was understood that Dees and Lynch should have the right acting in good faith, to exercise their own judgment in passing on the value of any property that might be offered to them, either by way of payment or as security, it was not understood, agreed, or contemplated that they or either of them should have the arbitrary right to refuse to accept property in payment or as security, or to insist on any terms or conditions, except that the property should be reasonably worth the price at the time it was offered.

"Said written contract was intended by all parties to express the agreement as above stated, and defendants say that this is in fact the proper construction of said contract; but, if the court shall hold otherwise, then defendants say that any language in said written contract having a different meaning was used by accident and mutual mistake, and defendants pray that this contract be so reformed as to express the real intention of the parties as above stated.

"Defendant Alexander agreed to become indorser on said note for defendant Jones on the distinct understanding, assurance, and agreements that the contract would be executed and carried out according to the letter and spirit of the agreement as hereinbefore stated, all of which was well known to plaintiff, Lynch, at the time. And if defendants had known or believed that plaintiff, Lynch, did not intend to carry out said contract in good faith, in accordance with its true spirit, or if they had known or believed that he would have failed or refused to do so, defendant Jones would never have signed the notes, and defendant Alexander would never have indorsed them. Defendants now say, however, that plaintiff, Lynch, never intended in good faith to carry out said contract, and that he has always failed and refused to do so; that on numerous occasions, before and after the maturity of the first

note, defendants have offered various properties to said Lynch, and offered him choice of a list of properties, agreeing to convey said properties to said Lynch at a reasonable price, in payment of said notes, but said Lynch, at all times, absolutely refused to give consideration whatever to any of the offers that were made, except saying that he would not consider any properties at any valuation exceeding the amount for which they were assessed for taxation, nor unless the prices were such as to make the investment attractive as a speculation, all of which was directly contrary to the letter and spirit of said contract, and from the beginning to the end said Lynch absolutely refused to comply in whole or in part with the terms and conditions of said contract, although defendants were ready, willing, and able to comply with the same, of all of which said Lynch was repeatedly advised. As a result of the failure and refusal of said Lynch to comply with his contract, the defendant Jones was unable to pay said notes, and heretofore, to wit, on the 5th day of January, 1909, the said Henderson county and the Van Zandt county properties described in said contract were sold out under the trust deed provided for in said contract; the Van Zandt county property having been sold to Mrs. Mary M. Brown for $500 and the Henderson county property having been sold to the Bond Guaranty Company for $750.

"Defendants show that, at the time said property was thus sold under said trust deed, said Henderson county property was reasonably worth $6,500, and said Van Zandt county property was reasonably worth $30,000; the same being subject to a first lien of $14,000, and the equity therefore being reasonably worth $16,000. The total value of the property of the said Jones that was thus closed out under said trust deed being $22,500 less what the property brought at trustee's sale, is the amount said Jones actually lost by the fraudulent conduct of said Lynch, and his failure and refusal to carry out said contract in good faith.

"The premises considered, defendants pray that plaintiff take nothing by this suit; that said notes upon which this suit is brought be canceled; that defendant Alexander be discharged from liability as indorser; that the defendant Jones have judgment against said Lynch for damages by reason of the premises; and that defendants have such other and further relief, both general and special, as they may, in law and equity, be entitled to."

On February 22, 1910, the Bond Guaranty Company specially pleaded: That it is and always has been a private corporation organized under the laws of Texas, with its principal and only office in the city of Dallas, Dallas county, Tex., and that it has not, and never has had, any office or agent in Ellis county, Tex. That the land in controversy in this suit consists of two tracts, one located in Henderson county, Tex., and the other in Van Zandt county, Tex., as shown by plaintiff's petition. That said Henderson county land has been sold by the trustee named in the trust deed set up in plaintiff's petition, at which sale this defendant purchased said land, and, having complied with the terms of sale, received a deed therefor and is now the legal and equitable owner of the same, claiming title under said trustee's deed; all of which defendant is ready to verify. Defendant Bond Guaranty Company further says: That prior to the institution of this suit it, for a valuable consideration, acquired the notes executed to T. M. Dees referred to in plaintiff's petition, and said Bond Guaranty Company is now the holder and owner of said notes which were originally secured by the deed of trust referred to in plaintiff's petition. That said notes are past due and wholly unpaid. That prior to said sales under said trust deed said Bond Guaranty Company placed said notes in the hands of W. J. Moroney, attorney at law, for collection, whereby the maker and indorser of said notes became liable to pay to said Bond Guaranty Company the attorney's fees provided for in said notes. That said notes, principal, interest, and attorney's fees are past due and wholly unpaid. All of the same have been declared due on account of default in payment of said first note, except that said notes have been credited with one-half of the proceeds of said trustee's sales; the gross amount of said proceeds being $1,250, and the expenses of making said sales being $35.50. Said defendant says that, if for any reason said sales should be set aside, it is entitled to have said credit canceled and to be adjudged to be equally interested with plaintiff in the securities created by said trust deed, and to have its rights and equities protected by any decree that may be rendered herein, and if, for any reason, said sales shall be set aside, said Bond Guaranty Company prays that its debt and lien be established and foreclosed, and that it have judgment for such other relief, both general and special, as it may in law and equity be entitled to.

A jury having been waived, a trial before the court resulted in a judgment for plaintiff, John Lynch, against George Phillips Jones, maker, and C. H. Alexander, as indorser upon the five notes sued on in the sum of $11,064.30, together with the further sum of $1,106.43, attorney's fees with a foreclosure of a lien as it existed, on the 29th day of April, 1907, on 640 acres of land in Henderson county, Tex.; it being the John Hancock survey No. 6. Defendant excepted to the judgment and perfected an appeal to this court.

### Conclusions of Fact.

On April 29, 1907, George Phillips Jones executed his five promissory notes of that date each for the sum of $1,500, due, respec-

tively, one, two, three, four, and five years after date, payable to John Lynch, which notes were indorsed by C. H. Alexander. These notes drew 7 per cent. per annum interest from date and provided for 10 per cent. attorney's fees if collected by suit or placed in the hands of an attorney for collection. At the same time said Jones executed a deed of trust to the sheriff of Van Zandt county, conveying to him 805 acres of land out of the G. W. Shelton survey in Van Zandt county, Tex., and the George Hancock survey No. 6 in Henderson county, containing 640 acres. These lands were conveyed in trust to secure the payment of said five notes and also five notes for the same amount in all respects similar to these notes, but payable to T. M. Dees. These notes payable to Dees subsequently became the property of the Bond Guaranty Company, a corporation located at Dallas, Tex. On the 5th day of January, 1909, J. W. Gentry, the sheriff of Van Zandt county, acting under the powers contained in the trust deed, after having advertised the property, sold the same at the request of the said Bond Guaranty Company of Dallas at public sale, and the same was bid in by C. H. Alexander. The land in Van Zandt county brought $500, and that in Henderson county $750. Deeds were executed by the trustee as directed by Alexander to the Bond Guaranty Company, for the land in Henderson county and to Mrs. Mary M. Brown for the land in Van Zandt county. No notice of the sale was given by the trustee to John Lynch, and both Alexander and the Bond Guaranty Company had knowledge of this fact at the time of the sale. At the time of the trial there was due on the notes payable to Jones, principal, interest, and attorney's fees, $12,170.73, for which sum the court rendered judgment.

Additional findings of fact appear in the opinion.

W. J. Moroney, for appellants. G. C. Groce and Farrar & McRae, for appellee.

BOOKHOUT, J. (after stating the facts as above). It is assigned that the court erred in rendering a personal judgment against defendant C. H. Alexander, because it appears from the evidence that said C. H. Alexander was merely an indorser or surety for George Phillips Jones, and that plaintiff has failed and refused to comply with his contract, which was the consideration for Alexander assuming liability on the notes sued upon. This contention is not sustained. If there had been a breach of the contract by Lynch as pleaded by appellant Jones, such breach would not release Alexander as indorser, but would, at most, only reduce the indebtedness by the amount of damages shown, and none were shown; nor was any attempt made to defend on this theory.

[1] Again, it seems that Alexander was not a mere indorser, but was an original promisor, who placed his name on the paper sued on before its delivery, to subserve purposes of his own, and is not entitled to the strict rights of a mere indorser, or surety. It appears that the notes sued on in this case, and the Dees notes, also, were given in lieu of other notes that were a lien on a ranch that Jones was trying to obtain, and trade for a system of waterworks at Cleburne. Alexander testified, in substance, that he indorsed the notes sued on in consideration of Jones' agreement to give him an option on the stock of the Cleburne Water Company which Jones was trying to trade for. He says, speaking of this trade, "I agreed to help Jones through, provided Jones would give me an option on the Cleburne Waterworks for a given length of time." On cross-examination he says: "I first became interested in this transaction when I reached an agreement with Jones that I was to get an option on some stock in that Cleburne property. * * * That was the result sought, to consummate this deal in order that I might get an option on the stock in the Cleburne property."

It is assigned that the court erred in rendering a personal judgment against the defendant George Phillips Jones, because it appears from the evidence that the wrongful conduct of the plaintiff was the direct and proximate cause of damages to defendant Jones equaling or exceeding the amount of the notes sued upon. The proposition presented is that a creditor who wrongfully caused the sacrifice of securities is responsible to the debtor for the damages thus incurred, and when such damages exceed the amount of the debt the creditor cannot recover. This contention is not tenable. Lynch did not breach his agreement because neither Jones nor Alexander ever sold the mortgage lands, or traded them for other lands, and Lynch, who lived at Port Arthur, was under no obligation to act until there had been a sale or trade of the mortgaged lands. The nearest to a sale of the mortgaged land shown by the record is that one Blum made Alexander a proposition to give Dallas property and Gas Company stock for the Henderson county land, which he refused, but which he says he would have accepted if he could not have done better, had Lynch agreed to it. He claims to have written Lynch of this proposition, but the correspondence shows that he was claiming a general right to pay the debt in land. The contract did not require Lynch to take payment in land, or to shift his liens to Gas Company stock.

It is contended that the court "erred in holding and decreeing that the sale of the Van Zandt county land under trust deed canceled and satisfied the notes held by the Bond Guaranty Company and originally held by T. M. Dees." It is insisted that the judgment in this respect is without pleading or evidence to support it. We do not concur in

this insistence. The evidence shows such fraud was committed on the rights of appellee Lynch by appellant Alexander and the attorney for the Bond Guaranty Company, which the court in the exercise of the equitable powers should not sanction, and which the trial court properly refused to sanction. There was a judgment by default in this case at the fall term in 1908 of the trial court, and afterwards counsel for appellants filed a motion to set this default aside because, among other reasons, it was claimed that the Bond Guaranty Company, as the holder of the "Dees notes," was an indispensable party to the suit. This motion was supported by the affidavit of appellant Alexander, and was sustained December 3, 1908. On December 10, 1908, the attorney for the Bond Guaranty Company wrote the sheriff of Van Zandt county, who was trustee in the deed of trust securing the notes sued on, inclosing notices of sale, and requesting a sale of the mortgaged lands on next legal sale day, to wit, the first Tuesday in January, 1909, which was the 5th day of January. On January 4, 1909, the attorney for the Bond Guaranty Company wrote the sheriff of Van Zandt county, giving directions about the sale, the letter to be delivered by the person to be sent to look after the matter for the Guaranty Company, who was C. H. Alexander. Alexander attended the sale. He says he was familiar with the mortgaged land, and that the Van Zandt land was worth $30,000 and the Henderson land $6,000 or $6,500. The Van Zandt county land was subject to a prior lien for $14,000. Alexander bought in the Henderson county land for $750 and the Van Zandt tract for $500 and had deeds made for the Henderson county tract to the Bond Guaranty Company and the Van Zandt county land to one Mary Brown, wife of the president of the Guaranty Company. Alexander testified he practically owned the Bond Guaranty Company at the time the sale was made. There is no pretense that Lynch had any notice of this foreclosure. He says he had none. Gentry, the trustee, said that he sold the land at the request of the Bond Guaranty Company, acting through Alexander, and that if he ever gave Lynch any notice of the sale he had no recollection of it. He had not paid Lynch anything, and did not have any recollection of knowing Lynch in the sale of the land. The rights of Lynch under the trust deed were not discussed even when the sale was being closed up by the deeds; his name was not mentioned, so far as the trustee remembered. Alexander told the trustee to sell the land; told him how to make the deeds; told him to come to Dallas, which he did, and in all these particulars his (Alexander's) directions were followed. The sale having been made at the request of the Bond Guaranty Company, and of Alexander, and each having

knowledge of the fact that the sale was being made without the knowledge of Lynch, their conduct in the matter of the sale was a fraud upon Lynch.

[2] It was the duty of the trustee to inform Lynch of his intended sale, and his failure to do so was a fraud upon Lynch's rights, whether done advisedly or negligently.

[3] Whenever the title to property has been acquired by fraud, concealment, or under other circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust upon the property in favor of the one equitably entitled to it. This principle applies whenever it is necessary to obtain complete justice. Schneider v. Sellers, 98 Tex. 390, 84 S. W. 417; Pomeroy's Eq. (3d Ed.) vol. 3, § 1053.

[4] Where there are several beneficiaries, and one takes part in a breach of trust, whereby loss is occasioned, his interest in the trust property may be reached to make good the loss of the other beneficiaries. Pomeroy's Eq. (3d Ed.) vol. 3, note 2 to section 1083. Whether the Bond Guaranty Company or Alexander took title to the trust property as shown by the record in this case, it, or he, held such property in trust for Lynch to the extent of his interest, and when the title to the Van Zandt property, the equity in which was worth more than the Guaranty Company's debt, was put in another party, the value of such property was chargeable to the Guaranty Company, and extinguished the debt in so far as Lynch is concerned. Schneider v. Sellers, supra. Under the allegations of plaintiff's petition, and the broad prayer for relief contained therein, and the facts found, the judgment rendered was authorized and proper.

It is contended that the court erred "in holding that the Van Zandt county land was bought at trustee's sale for the benefit of the Bond Guaranty Company, or C. H. Alexander, for the benefit of any one other than the purchaser, Mrs. Mary M. Brown." This contention cannot be sustained. Alexander's evidence shows that this land was bought in for the Guaranty Company, which he practically owned, and the deed to it was ordered made to Mrs. Brown to subserve purposes of his own.

Nor did the court err "in rendering judgment, without disposing of the cash shown to be in the hands of the trustee who made the sale in question in this case, and without adjudicating the rights of the parties to said funds in the hands of said trustee."

As to the money in the hands of the trustee, no issue as to it was made in the pleadings, and appellee has never claimed any interest in it.

Finding no reversible error in the record, the judgment is affirmed.