**HILL et al. v. STAMPFLI et al.**
**(No. 729–4659.)**

(Commission of Appeals of Texas, Section B.
Jan. 19, 1927.)

**I. Trusts ⟸348—Where no innocent purchaser has intervened, equity may raise constructive trust to do justice between parties or third parties.**

Equity has power to raise constructive trust of property to do complete justice between parties or as to third parties dealing with property, where no superior rights have intervened on principle of innocent purchaser.

**2. Trusts ⟸95—Conveyance by children and father with agreement to reconvey on payment of father's debt was conditional sale, and on reconveyance to father alone property reverted to former owners.**

Conveyance by children and father having life interest in payment of father's debt with contemporaneous agreement between father and purchaser for reconveyance was conditional sale, so that on payment of debt property reverted to former owners, though deed of reconveyance was to father only; it being presumed that father acted in good faith for benefit of real owners.

**3. Trusts ⟸95—Father holding life estate joining with children in conveying land to secure his debt holds land in trust for children on reconveyance to him alone.**

Where children's property was pledged by conditional sale to secure debt of father holding life estate and such debt was paid by father out of proceeds of property, reconveyance to father in his name alone made him trustee of property for benefit of children.

**4. Vendor and purchaser ⟸230(1) — One is conclusively charged with notice of facts in chain of title.**

Every one is conclusively charged with notice of facts necessarily shown in his chain of title.

**5. Vendor and purchaser ⟸230(4)—Grantee from father held charged with notice of children's interest in property conveyed to secure father's debt and reconveyed to father alone under option contract.**

Where children conveyed property to secure debt of father holding life interest therein, option contract taken by father alone to repurchase property on payment of debt was part of original deed, and hence purchaser from father, to whom property was reconveyed claiming under option contract, is charged with notice of extent of children's rights in property and acquired no greater title than father had.

**6. Vendor and purchaser ⟸229(1)—Purchasers are conclusively charged with notice of facts which could have been ascertained by ordinary diligence.**

Purchasers of property are conclusively charged with notice of every fact which by use of ordinary diligence and inquiry of proper sources they could have ascertained.

⟸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Mary Cornwall Hill and another against V. E. Stampfli and another. Judgment for defendants was affirmed by the Court of Civil Appeals (284 S. W. 237), and plaintiffs bring error. Reversed and remanded, with directions.

J. T. Montgomery and Kay, Akin & Smedley, all of Wichita Falls, and W. E. Forgy, of Archer City, for plaintiffs in error.

Joe H. Aynesworth and W. E. Wilson, both of Wichita Falls, and J. H. Barwise, Jr., of Fort Worth, for defendants in error.

SPEER, J. The following statement of the case is made by the Court of Civil Appeals:

"This suit was instituted by Edwin Hill and Mary C. Hill, son and daughter, respectively, of R. E. and Sallie C. Hill, to recover T. E. & L. Company survey No. 2408, containing 320 acres of land situated in Archer county, Tex. The defendants denied the allegations of the plaintiffs' petition and claimed under a deed from R. E. Hill to them. The suit, as finally cast by the pleadings and evidence, resolved itself into a contest of whether the following deed executed by R. E. Hill and his only children, Edwin and Mary C. Hill, was a mortgage, instead of a warranty deed, conveying full title as the defendants claimed, to wit:

"'R. E. Hill, Mary Cornwell Hill, by R. E. Hill, attorney in fact, and Edwin Hill, to the Texas Company.

"'Warranty Deed. Dated the 16th Day of February, 1922.

"'The State of Texas, County of Archer.

"'Know all men by these presents: That we, R. E. Hill, a widower, Edwin Hill, a single man, and Mary Cornwell Hill, a feme sole, all of said county and state, for and in consideration of the cancellation and delivery to us by the Texas Company, a corporation of Texas, of our certain joint and several promissory note, payable to the order of the Texas Company, at Houston, Texas, in the principal sum of $6,936.46, said note dated June 18, 1919, bearing interest from date at the rate of 8 per cent. per annum, have granted, sold and conveyed and do by these presents grant, sell and convey unto the said the Texas Company, that certain lot, tract or parcel of land situated in Archer county, Texas, more particularly described as all of T. E. & L. Company survey No. 2408, abstract No. 587, patent No. 196, vol. 22, containing 320 acres of land more or less, same being described by metes and bounds as follows:

"'Beginning at the northwest corner of T. E. & L. Co. survey No. 2407, also the southwest corner of T. E. & L. Co. survey No. 2415, and southeast corner of T. E. & L. Co. survey No. 2409; thence south 1,344 varas to a stake for corner; then west 1,344 varas to a stake for corner; thence north 1,344 varas to a stake for corner; thence east 1,344 varas to the place of beginning.

"'To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise

belonging unto the said the Texas Company, its successors and assigns, forever, and we do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said the Texas Company, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same, or any part thereof.

" 'Witness our hands this 16th day of February, A. D. 1922. R. E. Hill, Mary Cornwell Hill, by R. E. Hill, Agent and Attorney in Fact. Mary Cornwell Hill. Edwin Hill.

" 'Above instrument acknowledged by R. E. Hill before Mary Byman, notary public in and for Wichita county, Texas, on May 15, 1922, and by Edwin Hill, before same official on the 17th day of July, 1922, and by Mary Cornwell Hill, before Arthur P. Rogers, a notary public in and for Cook county, Illinois, on July 5, 1922. All certificates in statutory form.

" 'Filed for record in Archer county, Texas, on the 29th day of July, 1922.'

"It was agreed that the land was the separate property of Sallie C. Hill, the mother of the plaintiffs, and that she was the common source of title. The record title of Sallie C. Hill began under a deed to her, executed on the 28th day of July, 1908. During the following year R. E. and Sallie C. Hill executed a trust deed, in the usual form, to the Texas Land & Mortgage Company to secure the sum of $1,800. This debt was not paid at maturity and they executed several trust deeds thereafter to different parties to secure specified sums advanced for the purpose, among other things, of discharging the original obligation for $1,800. This process continued from time to time until the 28th day of February, 1914, upon which day R. E. Hill and wife executed a trust deed covering the land in controversy to secure the payment of $4,000 to W. L. Seibold. Sallie C. Hill died during this year, and later R. E. Hill, joined by the plaintiffs in this case, Edwin and Mary C. Hill, executed at various times several trust deeds securing sums of money advanced for the payment of previous debts, none of which having been paid, and, being pressed for payment by the Texas Company, which had in the meantime by proper assignments succeeded to the rights and equities of the previous holders of the notes and trust deed mentioned, further duly executed and delivered to the Texas Company, in settlement, the warranty deed hereinbefore copied.

"In the negotiations resulting in the execution of the deed just mentioned, the evidence tends to show that it was agreed between the negotiating agent of the Texas Company and R. E. Hill that the title could be reinvested in the parties to the deed upon certain conditions, pursuant to which the following instrument, designated as an option agreement, was executed by the Texas Company, to wit:

" 'Option Agreement.

" 'State of Texas, County of Harris.

" 'Dated the 1st day of March, 1922.

" 'Know all men by these presents: That the Texas Company, a corporation of Texas, acting herein by C. N. Scott, its vice president, for and in consideration of one dollar and other valuable considerations to it in hand paid by R. E. Hill of Young county, Texas, receipt whereof is hereby acknowledged, has granted and does hereby grant, unto the said R. E. Hill, his heirs and assigns, the sole and exclusive option to purchase at a price hereinafter more fully set out at any time prior to 6 o'clock p. m., February 16, 1923, that certain tract or parcel of land situated in Archer county, Texas, known as T. E. & L. Co. survey No. 2408, abstract No. 587, patent No. 196, vol. 22, containing 320 acres of land more or less, save and except therefrom the oil, gas and mineral lease acquired by said the Texas Company prior to the time it acquired the fee-simple title to said land, reference to which lease and the record thereof in the Deed Records of Archer county, Texas, is here now made for all purposes, said leasehold and all rights, titles and estates incident thereto are expressly reserved from this option and will be reserved from any conveyance growing out of the exercise thereof.

" 'If during the term of this option the said R. E. Hill, his heirs or assigns, shall elect to exercise same, he or they shall pay or tender to said the Texas Company, at Houston, Texas, in cash, the sum of eighty two hundred and six ($8,206.00) dollars plus any and all sums that may hereafter be paid by said company for taxes, insurance, repairs and upkeep together with interest on said $8,206.00 from February 16, 1922, and interest on such other sums from the respective dates of their payment to date of such tender at the rate of 8 per cent. per annum, less such rentals and payments which might have become due to the owner of said 320 acres of land under the terms of the oil, gas and mineral lease above referred to had such owner been some person other than said the Texas Company, and less the further sum which may be realized as the net profit accruing to said the Texas Company from the cultivation of said land, provided this last sum has actually been collected by said company upon such payment or tender in cash of the aggregate amount to be arrived at in the foregoing manner to said the Texas Company at Houston, Texas, said company will cause a proper deed of conveyance to be executed and delivered to the said R. E. Hill, his heirs or assigns hereunder covering the interest and estates covered by this option.

" 'If this option is not exercised by said R. E. Hill, his heirs and assigns, prior to 6 o'clock p. m., February 16, 1923, this instrument shall become null and void and of no further force and effect and all rights granted hereby shall terminate.'

"The Texas Company had, previously to the execution of the instruments last mentioned, duly acquired an oil and gas lease on the lands in controversy, which expired in September, 1923. The sums specified in the instrument designated as an option agreement not having been paid at the time therein fixed, the Texas Company, acting by T. J. Donahue, its vice president, on April 10, 1923, reconveyed (with certain exceptions to be hereinafter stated) to R. E. Hill the land in controversy by a deed in regular form and with the usual covenants of warranty for a recited consideration of $8,972.48 in cash, after which, on April 11, 1923, R. E. Hill, by general warranty deed in usual form, conveyed the land in controversy to the defendants I. H. Roberts and V. E. Stampfli for a recited consideration of $4,000 in cash and

the conveyance of certain property by the grantees to R. E. Hill. It is under this deed that the defendants below and appellees here claim.

"A jury was impaneled to try the issues presented in the pleadings and evidence heard, at the conclusion of which the plaintiffs requested a peremptory instruction to the jury to find in their favor. The defendants likewise presented a request for a peremptory instruction for a finding in their favor. The court sustained the motion of the defendants and instructed the jury to so find. This was done and judgment rendered accordingly. From the judgment so rendered, the plaintiffs have appealed and assign error to the action of the court in giving the peremptory instruction in favor of the defendants."

That court affirmed the judgment of the trial court upon its decision of what it denominated the controlling issues, that is, first, whether the deed of R. E. Hill and plaintiffs in error to the Texas Company was a mortgage at the time of the reconveyance by that company to R. E. Hill, or, second, whether or not the defendants in error had notice of such facts. 284 S. W. 237. We are of the opinion the issue of mortgage or no mortgage is not only not a controlling issue, but, moreover, in the view we take of the case, upon the undisputed facts, it is an immaterial issue.

Without in any wise passing upon this question, therefore, we will examine the case upon plaintiffs in error's contention that upon the reconveyance by the Texas Company to R. E. Hill under the circumstances he held the title to the land in trust for them, as upon a constructive trust, and that defendants in error are chargeable in law with notice of their rights. The principle invoked has perhaps never been more accurately stated than by Mr. Pomeroy, in section 1053 of his most excellent treatise on Equity Jurisprudence (4th Ed.), as follows:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed ex maleficio or ex delicto, are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."

[1] This text has often been quoted and the principle applied in this state. Schneider v. Sellers, 98 Tex. 380, 84 S. W. 417; Ward v. Scarborough (Tex. Com. App.) 236 S. W. 434. It is indeed true that the forms and varieties of these trusts are practically without limit. They are as varied as human ingenuity can make them, each case depending upon the circumstances surrounding the acquisition of the legal title. Equity is never wanting in power to do complete justice between the parties or even as to third parties dealing with the property where no superior rights have supervened upon the principle of innocent purchaser. Hendrix v. Nunn, 46 Tex. 141; Goldman v. Blum, 58 Tex. 630; Gillean v. Witherspoon (Tex. Civ. App.) 121 S. W. 909; Jones v. Lynch (Tex. Civ. App.) 137 S. W. 395; Home Inv. Co. v. Strange (Tex. Civ. App.) 152 S. W. 510; Id., 109 Tex. 342, 195 S. W. 849, 204 S. W. 314, 207 S. W. 307.

A familiar application of the principle is found in the renewal of a lease by one who stand in a fiduciary or quasi fiduciary relation to a lessee. That application is stated in 16 R. C. L. p. 904, as follows:

"In view of the principle that an expectancy of a renewal to the holder of a term is regarded in·equity as a valuable interest, it has been held from an early date that if one who stands in a fiduciary or quasi fiduciary relation to a lessee, or the person entitled'to the beneficial interest in a term for years, secures a renewal to himself, a court of equity will treat him as holding the new term in trust for the lessee or person entitled to the beneficial interest in the original term."

Now, the undisputed facts are that the land in controversy was the separate property of Mary C. Hill, wife of R. E. Hill, and that the plaintiffs in error are her only children and heirs. During the life of Mary C. Hill she' and her husband executed a mortgage to secure a community debt. After her death the plaintiffs in error joined their father, R. E. Hill, in a note to the Texas Company renewing the debt and also in the executing of a deed of trust on the land to secure the same. R. E. Hill failed to pay the debt and induced his children to sign the deed conveying the land to the Texas Company by assuring them that they would get the land back if the debt was paid in a year. The deed was executed in the form shown, and R. E. Hill without the knowledge or consent of his children took from the Texas Company the option agreement already set out. R. E. Hill failed to exercise the option given him within the time fixed, but a short time thereafter he did pay to the Texas Company, under an agreement with it, an amount of money exactly equal to his debt, with interest and· attorney's fees, plus certain charges for taxes and improvements, and less certain rents and oil rentals credited by the Texas Company. The Texas Company, in

consideration. of these payments, conveyed the land to R. E. Hill, reserving certain oil rights in the north one-half of the land for 15 years, subject to the payment of one-eighth royalty, but releasing the oil lease held by it on the entire tract. The evidence shows that the land when conveyed to the Texas Company was worth perhaps twice the amount of the debt due that company, and when conveyed back to R. E. Hill was worth even more.

[2, 3] It may be conceded for the purpose of the point under consideration that after the date fixed in the contract for redemption the Texas Company might have held the land against both R. E. Hill and his children. But there is certainly no doubt but that R. E. Hill, as against the Texas Company, by a timely compliance with his option, could have acquired the title to the property according to the agreement for resale. Neither is there any doubt but that the Texas Company could waive the time expiration for performance or otherwise extend such time and accept performance at a later day, either for the price originally stated, or such other price as the parties were able to agree upon. The correspondence disclosed in the record indicates that the transaction amounted to an extension of time to R. E. Hill, and the purchase indisputably was by virtue of his rights under the option contract as thus extended and slightly modified. So that, the transaction by which R. E. Hill acquired the legal title amounted simply to this: There was a conveyance of the children's property in payment of R. E. Hill's debt, with an agreement between R. E. Hill and the Texas Company for a reconveyance of the property to him upon the payment of the debt, and a subsequent payment of the debt in full and a deed taken in the name of R. E. Hill. There is no reason for holding that the property thus became the property of R. E. Hill. The deed, together with the contemporaneous agreement to resell, constituted the transaction a conditional sale, upon the performance of which conditions the title would revert in equity to the former owners. It will be observed the plaintiffs in error are not parties formally to the option or repurchase contract. In fact, they knew nothing about it. But the conduct of R. E. Hill in making this contract in his own name could not operate to deprive plaintiffs in error of their property upon its relinquishment under the repurchase agreement. The law conclusively presumes he was acting in good faith for the benefit of the real owner. He would not be heard to say otherwise. To permit such without the knowledge or consent of the real owner would be to authorize a fraud of the grossest character. Another fact which gives peculiar reason for the application of this general principle of trusts here is that the payment of R. E. Hill's debt was in fact made

from the proceeds of this very property. In other words, R. E. Hill has paid his debt from his children's property, pledged to secure that debt under a conditional sale, and has thus far been permitted to retain the balance of the proceeds thereof as his own. This cannot be sanctioned by any principle of law or equity. This is not a case of a purchase of the land by R. E. Hill, independent of, and aside from, the conditional sale; but whatever title he acquired has been by reason of that conditional sale and under its very terms as finally interpreted by the parties. He had a facility by means of his relation to the estate for obtaining the deed which he did receive. The law will not be so unkind as to presume under these circumstances that he meant to profit personally at his children's expense; but such purpose being shown, it will not be so unjust as to permit him to do so.

[4-6] It only remains to be seen whether defendants in error are in a better position than their grantor, R. E. Hill. Of course, every one is conclusively charged with notice of facts necessarily shown in his chain of title. Defendants in error claim under the option contract to repurchase. This option contract necessarily is a part and parcel, so far as they are concerned, of the deed executed by plaintiffs in error and their father. The two must be read together. In this way defendants in error are conclusively shown to have known that the land conveyed to the Texas Company belonged to plaintiffs in error, and that it was conditionally sold upon an agreement to reconvey to R. E. Hill upon the payment of the Texas Company debt. They necessarily knew that this defeasance, in the absence of a contract to the contrary, was for the benefit of the real owner of the land. In legal effect, as we have shown, the very instrument to which they looked for title spoke back to them the rights of the Hill children. The very origin of their immediate title was such at least to put them upon inquiry as to the rights of the plaintiffs in error. They are conclusively charged with notice of every fact which by the use of ordinary diligence and inquiry of the proper sources they would have ascertained. Goldman v. Blum, 58 Tex. 630. The rule has been thus crystallized:

"Where such facts or circumstances are known to a person in relation to a matter in which he is interested as are sufficient to make it his duty as an honest and prudent man to inquire concerning the rights of other persons in the same matter, and the course of inquiry thus suggested would, if followed with due diligence, lead to a discovery of rights in conflict with his own, the general rule is that he will be held chargeable with notice of all that he might thus have discovered, and will not be heard to say that he did not actually know of the fact or claim in question. Means of knowledge, with duty of using them, are deemed equivalent to knowledge itself, and passive good

faith will not serve to excuse willful ignorance." San Antonio, etc., Co. v. Sehorn (Tex. Civ. App.) 127 S. W. 246.

See, also, Skov v. Coffin (Tex. Civ. App.) 137 S. W. 450 (writ of error refused); Temple Lumber Co. v. Broocks (Tex. Civ. App.) 165 S. W. 507.

So that, the defendants in error either actually knew, or were conclusively presumed to know, that R. E. Hill's debt had been paid by a conveyance of the plaintiffs in error's property, the title to which had been reconveyed to R. E. Hill personally under a defeasance agreement with the creditor company, upon the payment of his debt out of the proceeds of this very property. Under these circumstances, they are charged with a notice of the extent of plaintiffs in error's rights. They are in no better position than their grantor was, and hold only such title as he actually held.

We therefore recommend that the judgments of both courts be reversed and the cause be remanded to the trial court, with instructions, if the evidence be the same upon another trial, that judgment be entered for plaintiffs in error for the land in controversy subject only to the life estate of R. E. Hill, which would belong to defendants in error, with an accounting.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court with instructions, as recommended by the Commission of Appeals.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.