## PARMENTER v. KELLIS.

### No. 14257.

Court of Civil Appeals of Texas. Fort Worth.

June 27, 1941.

Rehearing Denied Sept. 12, 1941.

J. W. Akin, of Dallas, and Arch Dawson, of Wichita Falls, for appellant.

Harris & Martin, of Wichita Falls, for appellee.

McDONALD, Chief Justice.

On and prior to January 5th, 1931, Mrs. Samary Parmenter, a widow, was the owner of a half section of land in Archer County, Texas. The land was encumbered with a lien securing an indebtedness of something like $4,800 owing to the Federal Land Bank of Houston. The payments on this loan had been kept up to date, but. Mrs. Parmenter owed taxes against the land aggregating about $176. On the date mentioned, Mrs. Parmenter executed and delivered to T. J. Kellis a general warranty deed purporting to convey the land in question, and on January 13th, 1931, Mrs. Parmenter and Kellis executed the following written agreement:

"This Agreement, Witnesseth:

"That Whereas, Mrs. Samary Parmenter has made, executed and delivered to T. J. Kellis of Ward County, Texas, a deed conveying the following described land situated in Archer County, Texas, to-wit: 320 acres of land known as the West one-half, of Section No. Six (6), Block No. Three (3), Certificate No. 32/3074, in the name of H. & T. C. R. R. Company, Abstract No. 830.

"with the understanding that the said T. J. Kellis is to pay off and discharge all delinquent taxes and delinquent payments on a loan held by the Federal Land Bank of Houston, Texas, and further, during the life of this contract, to pay taxes on said land as such taxes may become due, and to pay the amounts of principal and interest on said loan as same matures.

"Also, that the said T. J. Kellis shall apply on interest and other accumulated expenses on land above described all income from said land, including rents collection or revenue of any kind produced on said land during the five (5) year period this contract is in force.

"It being understood and agreed that this contract shall be in force for a term of five (5) years from the 1st day of January, A. D. 1931, unless sooner terminated by the provisions hereinafter set out.

"At any time within said five (5) year period the said Mrs. Samary Parmenter shall have the privilege and right of repaying to the said T. J. Kellis all sums of money by him so advanced and paid out, together with eight percent interest there-

on from the respective dates upon which he made such payments. In the event of such payment being made within the five (5) year period, the T. J. Kellis agrees and binds himself, his heirs and legal representatives to re-convey to the said Mrs. Samary Parmenter said land.

"Within the said five (5) year period the said Mrs. Samary Parmenter may sell or trade said land, provided the payment due to the said T. J. Kellis is made to him, and in such event, the said T. J. Kellis agrees to convey said land to any one designated by the said Mrs. Samary Parmenter.

"At any time during the term of this contract, the said T. J. Kellis may with the consent in writing of the said Mrs. Samary Parmenter, trade or sell the said land and make absolute title thereto to the purchaser, in which event the said T. J. Kellis is to be repaid the amount due him with interest as aforesaid, and the balance of the purchase price shall be paid to the said Mrs. Samary Parmenter. In event that the said Mrs. Samary Parmenter fails to repay to the said T. J. Kellis the amount so due him with interest within said five (5) year period, then the deed which has been executed and delivered by the said Mrs. Samary Parmenter to the said T. J. Kellis shall become absolute; and the said Mrs. Samary Parmenter shall have no further claim or right in or to said land.

"The interest mentioned in this contract is payable annually and may be paid at any time by Mrs. Samary Parmenter, but if the same should not be paid when due, then same shall bear interest at the rate of eight per cent.

"This instrument executed on this the 13 day of January, A. D. 1931.

"T. J. Kellis

"Mrs. Samary Parmenter.

"The State of Texas⎱
"County of Wichita ⎰

"Before me, the undersigned authority a Notary Public in and for Wichita County, Texas, on this day personally appeared Samary Parmenter, a feme sole, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

"Given under my hand and seal of office, this the 15th day of January, A. D. 1931.

"J. W. Akin, Notary Public,

"(Seal)    Wichita County, Texas."

The land described in the agreement is the same land described in the deed. The deed recites a total consideration of $9,600, $4,800 cash and the assumption by grantee of the $4,800 lien in favor of the Federal Land Bank of Houston. It is admitted that the $4,800 in cash was neither paid nor agreed to be paid.

Kellis took possession shortly after the deed was executed, and has had possession ever since. Kellis has met the payments to the Federal Land Bank, and has paid the taxes as they have accrued. Kellis has collected and retained all of the rents and revenues from the place.

Mrs. Parmenter did not pay to Kellis the amounts provided for in the contract, either during the five-year period mentioned therein, or at any time thereafter.

The trial was before the court without a jury. The court heard extrinsic evidence relating to the statements and actions of the parties, made before, at and after the dates of the deed and the agreement. In this court both appellant and appellee insist that the instruments are clear and unambiguous, and that consequently there is no need or justification for resorting to extrinsic evidence. In view of the disposition we make of the case, the question of the admissibility of this evidence is not controlling on this appeal, as we shall show.

The rule is now well known and well settled that a deed which purports on its face to be a conveyance of property without qualification may be held to be a mortgage of the property as security for the payment of a debt. The rule has been recognized by the Texas courts since the earliest days. Luckett v. Townsend, 3 Tex. 119, 49 Am.Dec. 723. The rule is equally well known and well settled that the transaction may be held to be a conditional sale, or sale with option to repurchase, if the facts so justify. The distinction between the two kinds of situations has long been recognized. See Ruffier v. Womack, 30 Tex. 332, and Conway v. Alexander, 7 Cranch 218, 3 L.Ed. 321. See also the discussion in 29 Tex.Juris., beginning at page 799, and the cases there cited. An oft-quoted test in such cases is that laid down in 3 Pomeroy's Equity Jurisprudence, 4th Ed., # 1195:

"The criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a security for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of the existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instrument. On the contrary, if no such relation whatsoever of debtor and creditor is left subsisting, then the transaction is not a mortgage, but a mere sale and contract of repurchase."

The rule just quoted is clear, but, as has been frequently said by the courts, the difficulty is in the application of the rule to the facts of a particular case.

The extrinsic evidence admitted by the court is in some degree at least conflicting, and to such extent is not helpful to appellant in view of the finding of the trial court that no mortgage was intended.

No money was paid by Kellis to Mrs. Parmenter. There was no previous debt owing by Mrs. Parmenter to Kellis. Many of the cases cited by appellant are not in point here because in them the fact that a debt was owing, or the fact that money was paid or advanced to the grantor at the time of the transaction, was considered by the court to have influence in the determination of the question of whether the relationship of debtor and creditor was created or left subsisting, as the case may have been.

Appellant contends that the following features and provisions of the contract evidence a mortgage:

(1) The provisions relating to interest to be paid by Mrs. Parmenter to Kellis.

(2) The use of the word "repay" three times in the contract.

(3) Reference to the monies to be paid by Mrs. Parmenter to Kellis for a reconveyance of the land as "the amount due him".

(4) Provisions of the contract giving Mrs. Parmenter the exclusive right during the five-year period to sell the land and limiting Kellis' rights in the event of such

sale to repayment of the amounts advanced by him with interest.

(5) The provision requiring Kellis to apply all rents and revenues from the land to payment on the indebtedness and other items assumed by Kellis.

(6) The provision to the effect that if Mrs. Parmenter should fail to pay Kellis the amount due him the deed should become absolute and she should have no further right in the land.

(7) The provision referring to the money to be paid by Mrs. Parmenter to Kellis as "all sums of money by him so advanced".

To restate the test applicable to this case, it is whether Mrs. Parmenter became indebted to Kellis for the amounts of money paid by him on the loan and taxes on this land. In other words, could Kellis have brought suit and recovered against Mrs. Parmenter a personal judgment for the amounts he paid on these items during the five-year period provided in the contract? If a debtor and creditor relation was created, the transaction must be held to be a mortgage. But a debt is a necessary ingredient of a mortgage, so that, if the option was left to Mrs. Parmenter to determine whether she would pay Kellis the amounts he had paid out, then it cannot be declared that there was a mortgage.

To review the facts in the many cases cited by the parties, and to compare them with the facts in the case on appeal, would result in a lengthy opinion. The following are some of the cases which have seemed to us to be most nearly in point: Conway v. Alexander, 7 Cranch 218, 3 L.Ed. 321; Ruffier v. Womack, 30 Tex. 332; Hubert v. Sistrunk, Ala.Sup., 53 So. 819; Reed v. Parker, 33 Wash. 107, 74 P. 61; Hubby v. Harris, 68 Tex. 91, 3 S.W. 558; Matthews v. Stevens, 163 Ark. 157, 259 S.W. 736; Hill v. Stampfli, Tex.Civ.App., 284 S.W. 237; Id., Tex.Com.App., 290 S.W. 522; McMurry v. Mercer, Tex.Civ.App., 73 S.W.2d 1087, writ of error refused; Wright v. Richcreek, Tex.Civ.App., 86 S. W.2d 478, writ of error dismissed; Red River Nat. Bank v. Latimer, Tex.Civ.App., 110 S.W.2d 232; Burns v. Fielder, 197 Ark. 85, 122 S.W.2d 160; Granberry v. McBride, Tex.Civ.App., 138 S.W.2d 283; Chinn v. Llangollen Stable, Inc., 6 Cir., 109 F.2d 66.

As is said in many of the cases cited, our duty is not to make a contract for the parties, but to construe the contract they have made. We must construe the contract as a whole, and if possible ascertain what the parties actually intended. After carefully considering the contract in this case, and after comparing it with those discussed in all of the cases cited to us by both appellant and appellee, we are convinced that, under the terms of this contract, it was entirely optional with Mrs. Parmenter whether she should reimburse Kellis for the amounts paid out by him and thus become entitled to a reconveyance of the land. We find nothing in the contract which obligated Mrs. Parmenter to pay any amount of money to Kellis if she did not wish to do so. Had Kellis sued and sought to recover a personal judgment against Mrs. Parmenter for the monies he had expended, we should have been compelled to hold that she had not promised or become obligated to pay him such amounts. There being no indebtedness created, there could be no mortgage.

To us, the contract plainly shows what these parties agreed upon. The property was conveyed to Kellis and he was put in possession. Mrs. Parmenter reserved an option to repurchase the land at any time within five years, the price to be calculated in the manner set out in the contract. She had the privilege of so doing if she wished, she was not bound to pay the money if she did not so wish. She did not exercise her option within the required time.

Mrs. Parmenter brought this suit to redeem the property from the mortgage, seeking an accounting to determine the amount she would have to pay to satisfy the mortgage. There having been no mortgage, the suit must fail.

The extrinsic evidence admitted, if it should be considered, was not such as to compel a reversal of the finding of the trial court that there was no mortgage.

Judgment of the trial court is affirmed.