**YOUNG et al. v. FITTS et al.**

No. 14639.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 22, 1944.

Rehearing Denied Oct. 27, 1944.

J. R. Wilson, of Wichita Falls, for appellants.

Benson & Benson, of Bowie, and Stine, Bunting & Stine, of Henrietta, for appellees.

SPEER, Justice.

One of the appellees, Earl C. Fitts, instituted this suit in statutory form of trespass to try title against appellants, C. O. Young and wife, Pearl Young, to recover 155.8 acres of land in Montague County, fully describing the land.

By a third amended answer appellants entered their plea of not guilty and specially pleaded the statute of three and ten years limitations. Appellants interpleaded D. B. and W. E. Benson as cross defendants, and by special pleas sought certain relief disclosed by their prayer, which will be mentioned later.

The ten-page pleading by appellants set out their homestead rights in the land beginning in 1913 and continuing to date of filing the amended pleading. They alleged in substance that Claud L. Gass was president and general manager of the Ringgold Bank; that for some time they had been indebted to the bank in a sum of about $1,900; that in the latter part of 1934 Gass asked them to give him a mort-

gage on their homestead to secure the bank debt, because the banking department would not let the notes remain in the bank; that on January 10, 1935, they did execute to Gass an instrument in the form of a warranty deed to their said homestead; that at the same time they entered into a written contract with Gass, that they executed the instruments to and with Gass for his accommodation to enable Gass to care for his own obligations to the bank; that it was intended by them and Gass that said instruments should constitute only a mortgage on their land and never was intended as a conveyance to Gass; that because of their homestead interests, such pretended mortgage lien was void.

Appellants' prayer was in effect that appellee Fitts take nothing by his purported action, that they recover title to the land, their costs, and general relief. Insofar as necessary, we think the foregoing is sufficient to enable us to discuss the points raised.

Briefly stated, the undisputed facts in this case reveal that appellants (the Youngs) purchased the land in 1913 and lived on it as their homestead at all times, at least, until the times involved here, and that their occupancy continued until the date of trial. Appellants owed the Ringgold Bank approximately $1,900 prior to and during 1934. Claud L. Gass was president and general manager of the bank. On January 9, 1935, Young and wife executed a general warranty deed to and in favor of Gass to the land, reciting the consideration to be, "the sum of Nineteen Hundred Sixty-six and No/100 Dollars ($1,966.00) to us in hand paid, and secured to be paid, by Claud L. Gass as follows: Nineteen Hundred Sixty-six and No/100 Dollars ($1,966.00) cash in hand paid, the receipt of which is hereby acknowledged, and the assumption of all indebtedness against said land herein conveyed, held by Robert Ralston Co., of Dallas, Texas, in the sum of Eleven Hundred Ninety Dollars ($1,190.00) and also the assumption of all delinquent taxes assessed against said land herein conveyed," followed by the usual and customary granting, habendum and general warranty clauses.

The Youngs and Gass also entered into a written contract which the Youngs said was executed simultaneously with the deed, but bears date and shows to have

been executed and acknowledged on January 10, 1935. The contract refers to the deed and says that it is made in "conjunction" with it. The deed was promptly filed for record and the contract was filed and recorded nearly two years later, but prior to the date of a deed from Gass and wife to appellees Fitts and the Bensons, which we shall mention later.

The contract between appellants and Gass made in connection with the deed between the same parties, and referred to in appellants' brief as the "Redemption Contract," and by appellees as a "home-made" contract, is lengthy, but its substance is as follows:

Young and wife are called first parties and Gass, second party. It stipulates that first parties had, "in conjunction" with this contract, conveyed by warranty deed to second party a certain tract of land, and describes it as in the deed (same land here in controversy). It recites that the conveyance was made for the consideration expressed in the warranty deed, which is the basic consideration, together with further stipulations in the contract.

1. Second party agreed that first party should have the privilege of "redeeming" the land at any time prior to January 10, 1937, provided first party pays to second party $1,966, "the cash consideration recited in warranty deed", and the sum of $1,190, the amount of a note and accrued interest secured by a vendor's lien on the land assumed by second party together with all taxes, delinquent or otherwise, that second party may have paid, with interest on all at 4%, "less any payments which may have been paid on the consideration by party of the first part." It was further stipulated that if first party had not redeemed the land within the time set, second party would grant an extension of two years additional for redemption under the same conditions.

2. First parties were to receive all crops grown on the land up to January 10, 1937, and during any period to which the contract may have been extended, unless the land was sold in fee, which should terminate the contract. No lease for grazing nor timber cut should be made without the consent of all parties.

3. First parties could contract for the sale of the land, "contingent for the carrying out of the first stipulation of this contract," second party reserving the right to buy at the same price first parties may or might contract for sale.

4. Oil or gas lease could be given by consent of all parties, and moneys received therefor should be applied to the "consideration of this contract to party of second part."

5. "Should the party of the first part be unable to, or did not take advantage of this redemption contract within the specified length of time recited in this contract, including any extension granted, it is agreed that, and by the party of second part, if any payments have been made on the consideration by party of first part, and said land is not redeemed according to the first stipulation, that party of the first part shall be reimbursed for any and all payments made on the consideration herein expressed."

On October 11, 1937, Claud L. Gass and wife, by warranty deed, conveyed the land in question to Earl C. Fitts, one-half, and to W. E. and D. B. Benson, one-half. The consideration is shown to be $2,000, $900 of which was recited to have been paid in the employment of grantees to perform certain legal services for grantors and subject to an indebtedness against the land of approximately $1,100 to Robert Ralston & Company.

On June 17, 1938, W. E. and D. B. Benson conveyed by warranty deed their one-half interest to Earl C. Fitts.

Both appellants (Young and wife) testified at great length as to their homestead claims and occupancy of the property and as to their purposes and intentions when they executed the deed and contract to and with Gass. The effect of it all was that they had no intention of selling or disposing of the land by a deed of conveyance, but that both the deed and contract were executed at Gass's request as a mortgage as an accommodation to help Gass out of some financial difficulties. Neither of them undertook to say that any fraud had been perpetrated upon them in the transaction with Gass. C. O. Young said no debts were cancelled when the deal was made, while Mrs. Young said "she guessed they were" and upon further inquiry said she didn't know. Appellants called as witnesses all three of the appellees, and their testimony was largely concerning conversations and transactions had between them and appellants at the time appellees claim to have

purchased from Gass; their testimony and that of appellants is very conflicting.

A jury having been demanded, appellants timely moved for an instructed verdict in their favor. This was refused by the court and special issues were submitted. The verdict was favorable to appellees. Appellants moved for judgment non obstante veredicto; this was by the court denied, and judgment was entered in favor of Earl C. Fitts for title to the land and denying appellants any relief on their cross action. From the judgment entered C. O. Young and wife have appealed.

Apparently the case was tried upon two theories or controverted issues:

(1) Was the deed from Young and wife, when considered with the contemporaneous contract, a conveyance to Gass with the option to the Youngs to redeem the property by a repurchase. Or, under all the facts and circumstances, did the instruments evidence an attempted mortgage on the homestead for purposes not permitted by law. Appellees contending that there was an actual conveyance conditioned for an option by the Youngs to repurchase, and appellants asserting that they constituted a void mortgage on the homestead.

(2) Appellees contended, and introduced testimony in support of it, that appellants were estopped to deny the conveyance of title and appellants offered testimony to the contrary.

Appellants' points from 1 to 11 inclusive complain of errors in the court's refusal to give their request for an instructed verdict and in refusing their motion for judgment notwithstanding the verdict. The 12th point relates to estoppel.

The eleven points assert as many reasons why appellants believe they should have had an instructed verdict, mainly because there was no evidence to support the verdict, and under such conditions when the court refused their request for an instructed verdict and submitted the case to a jury, the motion for judgment non obstante veredicto should have been sustained.

It appears to us that the sole issue involved here is whether or not the deed and contract made between the Youngs and Gass was a conveyance of the land with an option reserved by the Youngs to redeem or repurchase the property, or was it intended as an attempted mortgage on the homestead.

In response to special issues submitted, the jury found: (1) That at the time of the conveyance from the Youngs to Gass, it was not agreed between the parties that the instrument should constitute a mortgage for security of an indebtedness owing by C. O. Young to Gass. (4) It was agreed between Gass and the Youngs that they would deed the property to Gass with a right of the Youngs to buy it back within a certain time, for a certain price. (11) Quoting: "Do you find from a preponderance of the evidence that C. O. Young and wife, Pearl Young, executed the instrument to C. L. Gass merely as an accommodation to help him out with the Banking Examiner and not as a sale of the land in controversy?" Answer "No." There were special issues submitted and answered relating to estoppel; the answers were not favorable to appellants but in the view we take of this appeal we need not discuss them.

■ It is the universally settled rule in this state that if there is any evidence of probative value to support the jury verdict, the appellate courts will uphold it. This rule holds true even when the evidence is so conflicting that a verdict rendered either way would find sufficient support in the testimony. Choate v. San Antonio & A. P. R. Co., 91 Tex. 406, 44 S.W. 69; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; Long-Bell Lumber Co. v. Bynum, 138 Tex. 267, 158 S. W.2d 290; and many more decisions by Courts of Civil Appeals to the same effect, which the Supreme Court declined to review.

■ In determining whether or not an instructed verdict should have been had, the recognized test has long been: If discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict. 17 Tex. Jur. 910, § 410. The Supreme Court has many times, since publication of the above authority, confirmed the rule in such cases as City of Houston v. Chapman, Tex.Com. App., 123 S.W.2d 652; Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.

W.2d 112; McAfee et al. v. Travis Gas Corp. et al., 137 Tex. 314, 153 S.W.2d 442.

■ No objection was made by either party to parol testimony offered to explain the intentions of the parties to the deed and contract; the two instruments must be considered together and as a general rule, where they are plain and unambiguous, the effect will be arrived at from what is contained therein.

■ The contract provides that the Youngs shall have the privilege of "redeeming" the land under certain conditions. Under differing conditions the word "redeem" may mean different things. Illustrating: Webster's New International Dictionary says it means: "To regain possession of by payment of a stipulated price;—to recover or regain, as pledged or mortgaged property by payment of what is due." In such circumstances as before us, another rule of law would be applicable, that is, the facts and circumstances surrounding the transaction may be inquired into to ascertain the meaning of the language used.

■ We believe the deed and contract were executed so nearly together that from the contents of the contract they refer to the same subject matter and should be construed together. As we have seen, the word "redeem" has more than one meaning. In such cases, parol evidence is admissible to connect the instruments and explain any conflict between them. 10 Tex.Jur. 286, § 166.

■ Testimony shows that appellees, with knowledge that there was such a contract made, inquired of appellant, C. O. Young, what interest he claimed in the land and he said on first inquiry that, "He had deeded the property to Gass and he had a right to repurchase it, but he was not going to be able to buy it, and he would rather we (appellees) would have it than the banking department." After appellees had purchased the land from Gass, Young again told appellees, in substance, that he didn't know what he was going to do about it; he had not decided. There is no contention made that the Youngs ever attempted to exercise the right, privilege, or option given them by the terms of the contract. There is also testimony to the effect that after appellees purchased, Young asked them to do some repairs on the buildings, saying he would not be able to live there unless the repairs were made. C. O. Young denied these matters but under the rule announced above where the giving of an instruction for verdict is involved, we must consider only the testimony in its most favorable light to the one against whom the peremptory charge would have been given if the motion had been sustained. Testimony showed Gass served a term in a Federal prison and returned broken in health and mind; that he was physically and mentally unable to testify at a former trial (Young v. Fitts, Tex. Civ.App., 138 S.W.2d 579; Id., 138 Tex. 136, 157 S.W.2d 873) and that he had died before the trial from which this appeal was taken.

In support of the judgment appellees proved by appellant, C. O. Young, on cross examination that previous to the deal with Gass, he (Young) had owned 200 acres including the land in controversy; that there were 45 acres adjacent to this 155 acres involved in the deal with Gass; Young had for several years past rendered for taxes the whole 200 acres; that in 1935 after the Gass transaction, Young signed a rendition sheet showing 45 acres assessed to him bearing the endorsement "Balance of 200 acres, now Claud Gass." Thereafter each year up to and including 1942 he rendered 45 acres bearing the initials "H. S." meaning homestead. He said he had never, since 1934, rendered for taxes the land in controversy.

■ There is a recognized rule of law in this state to the effect that when language is used in a written document which is susceptible to dual meanings, the construction given it by the parties themselves furnishes the highest evidence of their intention. Their acts done in performance of it may be considered in arriving at the meaning of the language used, where ambiguity exists. 10 Tex. Jur. 298, § 171; Hinson v. Noble, Tex. Civ.App., 122 S.W.2d 1082.

In this case there was a plain warranty deed to the land made and delivered to Gass for the consideration therein recited. Simultaneously the contract was made. It is contended by appellants that the effect of the contract was to make of the deed a mere mortgage on the homestead. Upon this theory, appellants complain because the court denied giving their requested instruction.

In McMurry v. Mercer, Tex.Civ. App., 73 S.W.2d 1087, writ refused, it was held that to convert a deed absolute in form into a mere mortgage, it must appear that it was given to secure an indebtedness which the purported mortgagor was obligated to pay. That it must appear that the relation of debtor and creditor existed between the parties. Applying this test, we fail to see how the contract obligated the Youngs to pay any sum of money, or to meet any named obligation. Whatever they had the right, privilege or option to do depended not upon a promise to do it, but only if they desired to do·so. We conclude that the relation of debtor and creditor did not exist between them and Gass, and that they apparently had only the option to "redeem" or repurchase the land at the named time and price.

It is true that both appellants testified the instrument was given as a mortgage to secure their indebtedness; but that indebtedness was owing to the bank. Moreover, they being parties, their testimony on the point was not conclusive and only raised a jury issue.

Under the rule stated, we must consider the testimony given in support of the judgment in its most favorable light for the party against whom the verdict would have been rendered if the requested instruction had been given. There was testimony before the jury that an employee in the bank heard a part of the deal between Gass and appellants, and upon its consummation, Gass borrowed from the employee $1,800 and paid the amount of the notes to the bank and took the notes out and they were never returned to the bank as a part of its assets. Appellants testified that they were never called upon to make any payment on those notes.

Without further prolonging this discussion, we believe the holdings in Parmenter v. Kellis, Tex.Civ.App., 153 S.W.2d 965, writ of error refused, is controlling here. That case was decided by this court, opinion by Chief Justice McDonald, in which a very similar situation to the one now before us existed. We refer to what is there said and the authorities cited.

In view of what we have said, it is obvious that we overrule all points of assigned error raising the question of refusal to sustain the motions for instructed verdict and judgment notwithstanding the verdict.

Since the judgment must be sustained because of the jury verdict and the principles announced, it is unnecessary to discuss the matter of estoppel.

Finding no error in the judgment, it will be affirmed and it is so ordered.