**R. A. ROSINBAUM et ux., Appellants,**

**v.**

**W. C. BILLINGSLEY et ux., et al., Appellees.**

No. 3112.

Court of Civil Appeals of Texas.

Eastland.

Oct. 15, 1954.

Rehearing Denied Nov. 12, 1954.

Archer & Overshiner, Abilene, for appellants.

Smith, Bickley & Pope, Abilene, for appellees.

LONG, Justice.

On May 28, 1952, R. A. Rosinbaum and wife, Fannie Rosinbaum, executed and delivered a warranty deed to W. C. Billingsley conveying 200 acres of land in Callahan County, Texas. The deed recited a consideration of $18,000, of which $9,600 was paid in cash and the Rosinbaums retained a vendor's lien to secure the payment of the balance of the consideration, in the sum of $8,400. Billingsley obtained a loan for $8,400 from Kansas City Life Insurance Company and with the proceeds of this loan and $9,600 cash all the debts of Rosinbaum were paid, including a lien against the land in favor of the Federal Land Bank of Houston, and Rosinbaum received $7,494.49 in cash. The Rosinbaums transferred the vendor's lien to Kansas City Life Insurance Company. This suit was instituted by Rosinbaum and wife against Billingsley and wife and Kansas City Life Insurance Company to cancel said deed and the lien against the land. The Rosinbaums alleged that the land was and had been for a number of years their homestead and that, although the deed was absolute on its face, the deed was intended as a mortgage to secure the payment of $18,000 due by them to Billingsley. They further alleged that the life insurance company had notice that said deed was a mortgage at the time the loan

was made to Billingsley; that the land being their homestead the deed and lien were void. Billingsley answered that the deed constituted a valid sale and that the Rosinbaums were given an option to re-purchase the land on or before January 31, 1953, by paying the consideration recited in the deed with interest thereon and was; therefore, not void. The court rendered judgment in favor of the insurance company and submitted the case to the jury as between the Billingsleys and the Rosinbaums. The jury found there was a sale with an option to re-purchase. The court entered judgment that the Rosinbaums take nothing. The Rosinbaums have appealed, but they do not appeal from the judgment in favor of Kansas City Life Insurance Company.

A short time after execution and delivery of the deed from the Rosinbaums to Billingsley, the parties entered into the following agreement:

"W. C. Billingsley and wife, Merle Billingsley, hereinafter called Purchaser, purchased from R. A. Rosinbaum and wife, Fannie Rosinbaum, hereinafter called Seller, the following described property situated in Callahan County, State of Texas, and being the North 200 acres off of the North ½ of Section No. 36, Block No. 8, T. & P. Ry. Co. Surveys in said Callahan County, Texas, Certificate No. 1/125, Abstract No. 851, Patent No. 145, Vol. 10, dated February 24, 1890, and described by metes and bounds as follows: (Particular Description Omitted.) * * * and containing 200 acres of land, more or less, for the total sum of $18,000.00, transaction being completed on 7th day of June 1952, payment made in full by purchaser to seller.

"It is agreed by both seller and purchaser that the seller shall reside on the above described property, free of rent from the 7th day of June, 1952 through 31st day of January, 1953, with the option of paying purchaser the full price of $18,000.00, plus 8% interest at any time between June 7, 1952 and January 31, 1953, but that option will terminate

January 31, 1953, with seller conveying above described to purchaser. *$8,400.00 (amount of loan) has 5% interest— $9,600.00 at 8%—$9,600.00,* more or less. (The portion italicized was written in long hand and initialed by the parties in the left hand margin.)

"The above $18,000.00 can be paid to purchaser, W. C. Billingsley, only by seller, R. A. Rosinbaum and Fannie Rosinbaum. No third party can be involved in any way.

"The above described place will be deeded only to R. A. Rosinbaum and Fannie Rosinbaum, with deed to be kept in R. A. Rosinbaum's name for the period of twelve months.

"If seller does pay back the full amount of $18,000.00, plus 8% interest by January 31, 1953, W. C. Billingsley shall have free lease on the 80 acres, more or less, now in oats and Southwest of residence, the 25 acres more or less, now in feed North of residence, and the fenced pasture North of residence."

■ The law is well settled that a deed absolute on its face purporting to convey a homestead is void if intended as security for a loan, but it is equally true that if the parties intended for title to vest in the grantee and for title to be reconveyed to the grantor on payment of a stipulated sum within a definite time the transaction is not void. 22 Tex.Jur., page 158, Sec. 110. The controlling question presented is whether the parties intended for the deed to be security for a loan or to vest title in Billingsley with the right for Rosinbaum to re-purchase within a definite time.

■ Appellants, by their first and second points, contend the court erred in refusing their motion for a directed verdict for the reason that the deed and contract, when construed together, show that the transaction was not a bona fide sale but on the contrary, the deed was executed for the purpose of securing a loan and was, therefore, a mortgage. We do not agree

with this contention. We believe the rule as laid down by Judge Speer of the Fort Worth Court of Civil Appeals in Young v. Fitts, 183 S.W.2d 186, 191, (Writ Ref.), is controlling here:

"In McMurry v. Mercer, Tex.Civ. App., 73 S.W.2d 1087, writ refused, it was held that to convert a deed absolute in form into a mere mortgage, it must appear that it was given to secure an indebtedness which the purported mortgagor was obligated to pay. That it must appear that the relation of debtor and creditor existed between the parties. Applying this test, we fail to see how the contract obligated the Youngs to pay any sum of money, or to meet any named obligation. Whatever they had the right, privilege or option to do depended not upon a promise to do it, but only if they desired to do so. We conclude that the relation of debtor and creditor did not exist between them and Gass, and that they apparently had only the option to 'redeem' or repurchase the land at the named time and price."

■ The record discloses that Billingsley operated a filling station in Abilene and was not engaged in the loan business. Rosinbaum had been his customer for many years. The Rosinbaums constructed a house upon the land involved. They ran into financial difficulties before the house was completed. They owed Bowman Lumber Company of Clyde a bill for material which they were unable to pay. Bowman was pressing payment and threatening suit. Billingsley and Rosinbaum entered into negotiations whereby Billingsley would buy the property. They finally agreed upon a price of $18,000 for the land. Billingsley, by borrowing some money from the bank at Bronte, was able to raise $9,600 in cash. A loan was then secured from Kansas City Life Insurance Company for the remainder of the consideration. Rosinbaum at that time owed the Federal Land Bank a debt which was secured by a lien on the land. At the time the deed was executed and delivered, the loan to the Federal Land

Bank and the debt to Bowman Lumber Company were paid. The remainder of the consideration, amounting to nearly $7,500, was paid to Rosinbaum. When the contract, which was executed after execution and delivery of the deed, is properly construed, we are compelled to conclude that the Rosinbaums were not obligated to pay Billingsley the $18,000 but merely had an option to pay said consideration within a definite time and obtain a reconveyance of the land. In other words, the relation of debtor and creditor did not exist between the parties. Billingsley could not have compelled payment of the $18,000. Before a deed absolute on its face can be construed as a mortgage, the relation of debtor and creditor must exist between the parties. If there is no indebtedness there can be no lien. We find many authorities to support our conclusion but we think the following are sufficient: Parmenter v. Kellis, Tex. Civ.App., 153 S.W.2d 965 (Writ Ref.), and the authorities therein cited, together with Young v. Fitts, supra, and McMurry v. Mercer, supra.

If we should be mistaken in holding that the contract shows upon its face to be a sale with option to re-purchase, then this judgment should be affirmed on another ground. Appellants and appellees introduced evidence tending to show the intention of the parties at the time of the execution of the deed. The jury found that the transaction was a sale with option to re-purchase. This finding is amply supported by the evidence. Although appellants testified that they did not intend for the deed to be absolute and that it was given to secure a loan, still this was a question for the jury to determine. Appellee Billingsley testified that it was not a loan, but was an absolute sale. Other witnesses testified to conversations had with Mr. Rosinbaum which indicated that he was selling the land to Billingsley. Billingsley paid the taxes on the land for 1952 and made the first payment of the loan due Kansas City Life Insurance Company. We have no authority to disturb a jury finding which is supported by the evidence.

The trial court did not err in refusing to instruct a verdict in favor of appellants.

Appellants' points one and two are overruled.

By points three and four, appellants insist the trial court erred in admitting testimony of certain witnesses for appellee who testified to the market value of the property in question, assigning as reasons therefor that said witnesses were not qualified as experts and were not shown to have inspected the premises sufficiently to form an opinion of the value. The witness Taylor, one of the witnesses about whom complaint is made, testified that he knew the market value of land in this section of the State; that he was an appraiser for an insurance company; that he appraised the property for Kansas City Life Insurance Company a short time before the loan was made on the land to appellee Billingsley. Another witness, Bryant, testified that he had lived in Callahan County all of his life and had served as County Clerk of the county for six years; that for the past six years he had been engaged in the loan business representing the Federal Land Bank. He testified that he was acquainted with the land involved here. The witness Freeland testified that he had lived in the county for 46 years and was engaged in the real estate business and was a licensed real estate dealer and was familiar with lands in Callahan County and particularly with those in the neighborhood where the land involved is situated and that he was acquainted with values in that neighborhood. The witness Thompson testified that he lived in Abilene and was engaged in the real estate business and had been for several years; that he had inspected the land involved in this suit. We believe the trial court did not err in not striking the testimony of these witnesses relative to the value of the land. We believe that they were shown to have possessed sufficient knowledge of the land and were qualified to testify. A witness as to land values is not necessarily an expert. Whether or not the witness is shown to be qualified rests largely within the sound discretion of the trial court. We would not disturb the ruling of the trial court on this question unless a clear abuse of discretion

was shown. We find no abuse of discretion and the points are accordingly overruled. Texas Pacific Coal & Oil Co. v. Taylor, Tex.Civ.App., 47 S.W.2d 1110; Byrd Irr. Co. v. Smyth, Tex.Civ.App., 157 S.W. 260; San Antonio & A. P. Ry. Co. v. Ruby, 80 Tex. 172, 15 S.W. 1040.

While counsel for appellants was examining their witness Gardner, the court sustained an objection to the following question: "And he very definitely told you that he had—." At the time the objection was sustained counsel for appellant said: "What objection? I haven't got the question out yet." To which the court replied: "I imagine it would be objectionable."

 By their fifth point appellants contend the statement of the trial court, "I imagine it would be objectionable" was a comment on the weight of the evidence and designed to embarrass counsel and create hostility towards him in the minds of the jury. We do not agree with this contention. It is true counsel had not completed his question but he had gone far enough for the court to readily determine that the question was leading and suggestive. The statement of the trial court, to our minds, is not a comment on the weight of the evidence and was not designed by the trial court to embarrass counsel and create hostility in the minds of the jury and did not probably have that effect. This point is overruled.

At one point counsel for appellants requested permission to have the jury retire in order that he might take a bill of exception. The trial court instructed the jury to step into the jury room while counsel took his bill. At the time counsel requested the court to retire the jury the court said: "Gentlemen, you will have to step into the jury room while he makes his bill, whatever he has got." Appellants assign as error the statement of the trial judge, "whatever he has got." We find no error in this point. The comment was not on the weight of the evidence and was not calculated to inflame the minds of the jury against the appellants. The trial court was merely telling the jury that he was going to give counsel an opportunity to take a bill of exception and to place therein such matters as he desired.

By points seven and eight, appellants contend that they were not given a fair opportunity to cross examine Billingsley relative to the fair rental value of the property and the market value thereof. We have considered the record and have concluded that counsel had a fair opportunity to cross examine appellee on these matters and that no reversible error is shown in these points. We have carefully examined all points of error raised and have determined that reversible error is not shown in any of them and they are accordingly overruled.

The judgment of the trial court is affirmed.