F.G. CHERRY et al., Appellants,

v.

Richard W. JOHNSON, Appellee.

No. 11-85-206-CV.

Court of Appeals of Texas, Eastland.

Jan. 30, 1986.

Rehearing Denied Feb. 27, 1986.

Jerry W. Hill, Roberts, Harbour, Smith & Harris, Longview, for appellants.

Melvin R. Wilcox, III, Smead, Anderson, Wilcox & Dunn, Longview, for appellee.

## OPINION

DICKENSON, Justice.

Richard W. Johnson sued F.G. Cherry and Texas State Bank of Tatum, alleging a pretended sale of his homestead and claiming that defendants had charged him usurious interest. Following a trial by jury, judgment was rendered on the verdict for plaintiff. Defendants appeal. We reverse and render.[1]

Richard W. Johnson testified that he bought the 348 acres of land in 1974 for $125,000. He built a home and made other improvements to the property. He began to have financial difficulties after he and his wife got a divorce, and he bought her interest in the 348 acres. The home and 200 acres constituted his homestead. He had received foreclosure notices in connection with the vendor's lien which his grantor had reserved on the property, and he began "seeking some money to try to extricate [himself] from this financial condition [he] was in in 1981." Johnson estimated the property as being worth "between $250,000 and $300,000." His total debt at that time was $118,516.84. No one was willing to loan him money, and he did not want to sell the property. Johnson talked to F.G. Cherry, and Cherry looked at the property. In a later discussion Cherry said the "bank couldn't go along with it [a loan] at this time" and asked Johnson to see if he could find some other financing. Johnson said that Cherry told him that if he could not find any financing, "to contact him again, he might just be able to do something with me." After Johnson "came up with nothing" he talked to Cherry again and told him that he was "running out of time" before the foreclosure sale. Johnson claims that Cherry loaned him the money.

Johnson admitted that the instruments which were executed were: (1) a warranty deed from him to Cherry and the Bank; (2) an option for him to repurchase the land; and (3) a lease which would allow him to keep possession during the period of his option to repurchase. There were no notes executed. Johnson admitted that he read the instruments and signed them of his own free will.

Cherry paid $120,000 and assumed the $38,000 balance on the note from Johnson to his ex-wife. The option to repurchase called for payment of $132,000 and for Johnson to re-assume the obligation to pay the note to his ex-wife. The lease called for the payment of $25,020 in two installments. Johnson admitted that the "man said it was going to be drawn up as a sale," but as far as Johnson was concerned, it was a loan. Johnson received a demand letter from the Bank after he failed to pay the second lease payment, and later he received a notice to vacate the premises. Shortly after that this lawsuit was filed.

Cherry and the Bank testified that there was no loan, that there was a legitimate sale with an option for Johnson to repurchase the property, and that the lease allowed him to have possession during the period until the option expired. The jury resolved the factual disputes with a verdict which may be summarized as:

1. The instrument dated October 27, 1981, from Richard W. Johnson, as

---

1. This appeal was transferred from the Tyler Court of Appeals to this Court on September 18, 1985. See TEX. GOV'T CODE ANN. sec. 73.001 (Vernon Pamph. 1986).

grantor, to F.G. Cherry and Texas Bank of Tatum, as grantees, is a mortgage.

2. Part of the $132,000 repurchase price contained in the option was a charge for the lending of money.

3. $12,000 of the repurchase price was a charge for the lending of money.

4. Part of the $25,020 to be paid to Cherry under the lease agreement was in fact a charge for the lending of the money.

5. $20,000 of the lease payment was a charge for the lending of money.

6. Reasonable attorney's fees of: (a) $6,000 for preparation and trial; (b) $2,000 for an appeal to the Court of Appeals; and (c) $2,000 in the Supreme Court.

Appellants briefed two points of error in their original brief. We need not discuss the points raised in their supplemental brief.

First, appellants argue that the trial court erred in rendering judgment for Johnson because the deed in question could not be construed as a mortgage under the evidence in this case. Next, appellants argue that the trial court erred in rendering judgment for usury penalties and attorney's fees because the transaction was a fee simple transfer and not a loan. We sustain both points of error.

■ We follow this Court's holding in *Rosinbaum v. Billingsley,* 272 S.W.2d 591 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.), where the question presented was whether the parties intended for the deed to be security for a loan or to vest the title in the grantee subject to grantor's right to repurchase within a definite time. This Court quoted the applicable rule, 272 S.W.2d at 593:

[T]o convert a deed absolute in form into a mere mortgage, *it must appear that it was given to secure an indebtedness which the purported mortgagor was obligated to pay.* That it must appear that the relation of debtor and creditor existed between the parties. (Emphasis added)

This Court then said, 272 S.W.2d at 594: "If there is no indebtedness there can be no lien."

A similar result was reached in *McMurry v. Mercer,* 73 S.W.2d 1087 (Tex.Civ.App.—Dallas 1934, writ ref'd). See also *Parmenter v. Kellis,* 153 S.W.2d 965 at 967 (Tex. Civ.App.—Fort Worth 1941, writ ref'd).

■ In the case now before us Johnson executed a general warranty deed to Cherry and the Bank. The deed is absolute on its face. Cherry and the Bank executed an option on the same day, giving Johnson the right to repurchase the land one year later, with the option being good for a period of six months. Cherry and the Bank also executed a lease in Johnson's favor for one year which provided for one six-month extension.

There is no note. The only enforceable obligation for Johnson to pay is the lease rental payments. He had the option, but not the obligation, to repurchase the land.

We do not agree with *Bantuelle v. Williams,* 667 S.W.2d 810 at 818 (Tex.App.—Dallas 1983, writ ref'd n.r.e.), which is relied upon by appellee and which holds:

[S]ince the court accepted the Williamses' testimony that the transaction was a loan, *the law will impute the existence of a debt* owed by the Williamses to Bantuelle, thus creating the relationship of debtor and creditor. (Emphasis added)

*Bantuelle* is in conflict with, and does not discuss, the earlier "writ refused" holding by that court in *McMurry v. Mercer,* supra at 1089:

To convert a deed absolute in form into a mortgage, it must appear that it was executed to secure the payment of an indebtedness, or the performance of some obligation....

As it was entirely optional with each grantor to pay the agreed price and receive a reconveyance, or not to do so, Mercer was in no position to compel payment; therefore, under the test stated, the relation of debtor and creditor did not

exist; hence, it cannot be said that the deeds are mortgages.

We hold that there was no debt, and no obligation to repurchase, owed by Johnson; consequently, the deed cannot be converted into a mortgage.

The judgment of ·the trial court is reversed, and this Court renders judgment that Richard W. Johnson take nothing.